Commonwealth v. Sullivan.

COMMONWEALTH vs. KEVIN P. SULLIVAN.

No. 88-P-441.

Middlesex. October 16, 1989. - July 31, 1990.

Present: PERRETTA, KAPLAN, & SMITH, JJ.

*Homicide. Malice. Practice, Criminal,* Instructions to jury.

At the trial of a second degree murder charge the judge correctly instructed the jury on the element of malice aforethought and on the lesser offenses of voluntary and involuntary manslaughter; the instructions, viewed as a whole, made clear the distinctions between the crimes and the possible verdicts. [96-99]

At the trial of a second degree murder charge, no error appeared in the judge's instructions on the effect of the defendant's intoxication in respect to his intent at the time he stabbed the victim. [99]

INDICTMENTS found and returned in the Superior Court Department on January 12, 1983.

After review by this court, 20 Mass. App. Ct. 802 (1985), the cases were retried before *Robert W. Banks*, J.

*William J. Leahy*, Committee for Public Counsel Services, for the defendant.

*Catherine E. Sullivan*, Assistant District Attorney, for the Commonwealth.

PERRETTA, J. Upon retrial after the reversal of his conviction because of error in the jury instructions on reasonable doubt, *Commonwealth* v. *Sullivan*, 20 Mass. App. Ct. 802, 804-807 (1985), the defendant was again found guilty of murder in the second degree.[1] In reversing the defendant's first convictions, we considered issues likely to recur at any retrial and stated that it would be "wise" to instruct the jury on involuntary manslaughter. *Id.* at 809. Such an instruction

---

[1] The defendant was also found guilty of assault and battery by means of a dangerous weapon. His appeal raises no issue with regard to that conviction.

was requested and given at the retrial. On appeal, the defendant claims that the definitions of malice aforethought and wanton or reckless conduct given to the jury were so similar that they failed to provide the jury with a rational basis by which to distinguish between murder in the second degree and involuntary manslaughter. He further argues that it was error for the judge to refuse to allow the jury to consider the evidence of his intoxication on the question of his intent to do an act under circumstances which permit a jury to infer malice. We affirm the convictions.

I. *The Facts.*

Because the evidence presented at the second trial on the charge of murder in the second degree was substantially similar to that offered at the first trial, we repeat the brief but sufficient recitation appearing in *Commonwealth* v. *Sullivan,* 20 Mass. App. Ct. at 803. "Among the patrons who had been ushering in the new year, 1983, at the Stephen James House in Porter Square, Cambridge, were the victims and the defendant Sullivan. Their celebration had been characterized by ample drinking, particularly on the part of Sullivan. At about 1:45 A.M., Sullivan and his wife emerged from the restaurant arguing, Sullivan resorting to blows and shoves. Grimes and Kelly, who did not know the Sullivans, intervened in what they perceived as a wife-beating episode. There was a fight. Sullivan pulled a knife with which he stabbed Grimes fatally and Kelly much less severely."

At retrial, the defendant again admitted stabbing Grimes and Kelly and reasserted that "he acted in defense of himself and his wife." *Ibid.* His testimony which supported an instruction on involuntary manslaughter was, essentially, that as he was being held to the ground and beaten, he reached into his back pocket, withdrew and opened his knife, and swung twice with the "intent to get the guys off me so I could help my wife." He stated that he swung "blindly" and did not even realize that he had stabbed Grimes, who continued to hold him by the hair and hit him. He swung a second time, stabbing Grimes in the hand and sending him backwards.

## II. *The Instructions on Malice.*[2]

In setting out the elements of murder in the second degree, the judge explained "malice aforethought" in language generally consistent with the cases. To cite but a few, see *Commonwealth* v. *Pierce*, 138 Mass. 165, 178 (1884); *Commonwealth* v. *Madeiros*, 255 Mass. 304, 315 (1926); *Commonwealth* v. *Huot*, 380 Mass. 403, 408 (1980); *Commonwealth* v. *Starling*, 382 Mass. 423, 427-429 (1981). That is to say, the judge instructed: "Malice may be proven by an unexcused intent to kill or to do grievous bodily harm or to do an act creating a plain and strong likelihood that either death or grievous harm would follow." He explained that the Commonwealth was not required to prove that the defendant had an actual intent to kill in order to prove malice aforethought. It was enough for the Commonwealth to prove beyond a reasonable doubt that the defendant had a "general intent," as he had earlier defined that term,[3] "to do an act

---

[2] It is the Commonwealth's position that we need not consider the defendant's claim because his testimony shows any error to be harmless. First, the Commonwealth asserts that the defendant was not entitled to an instruction on involuntary manslaughter as he admitted that the stabbing was intentional. We think it enough to state that the Commonwealth misreads the defendant's testimony. He admitted to swinging the knife intentionally but blindly and with the intent to get the man atop him off, not to stab him.

Additionally, the Commonwealth claims that the jury's verdict shows that they rejected his testimony. Had they believed the defendant, they would have found him not guilty or guilty of manslaughter by reason of his use of excessive force in defending himself and his wife; therefore, the evidentiary basis for involuntary manslaughter was rejected by the jury. See, e.g., *Commonwealth* v. *Zaccagnini*, 383 Mass. 615 (1981); *Commonwealth* v. *Turner*, 24 Mass. App. Ct. 902, 903-904 (1987), cases involving claims of accident *while* acting in self-defense. In the present case, however, there is no implicit "linkage," *id.* at 903, in the defendant's testimony. The jury could have disbelieved the defendant's assertion of self-defense, and, based upon portions of the defendant's testimony and that of other witnesses, they could have found that he acted recklessly and wantonly when he withdrew and swung his knife blindly and heedlessly. We consider the defendant's claim.

[3] "General intent is when we do things more or less unconsciously: it is a reflex action, like sitting down in a chair, walking upstairs. These are done with general intent. We do not do them unless our mind first resolves that

creating a plain and strong likelihood of death or grievous bodily harm."[4]

Turning to involuntary manslaughter, the judge adhered to *Commonwealth* v. *Welansky*, 316 Mass. 383, 398-399 (1944). He stated: "In order to determine the existence of wanton or reckless conduct, as distinguished from mere negligence, the Commonwealth must show that grave danger to others was apparent and the defendant chose to run the risk rather than alter his conduct so as to avoid the act or omission which caused the harm."

III. *Murder or Manslaughter.*

An unjustified or unexcused killing is either murder or manslaughter. The transformation turns upon the "degree of danger attending [the act]," *Commonwealth* v. *Pierce*, 138 Mass. at 178, the presence or the absence of malice. *Commonwealth* v. *Webster*, 5 Cush. 295, 304 (1850). A jury, therefore, must clearly be shown the " 'malice' — 'no malice' fork in the road." *Commonwealth* v. *Boucher*, 403 Mass. 659, 663 (1989). The defendant claims that use of the terms "grievous bodily harm" in defining malice and "grave danger" in explaining involuntary manslaughter put the jury on a straight road. He argues that any difference between the general intent to do an act creating a strong likelihood of death or grievous bodily harm and the general intent to do an act presenting a grave danger to another is too negligible to allow for a reasoned choice. Cf. *Commonwealth* v. *Parenti*, 14 Mass. App. Ct. 696, 701 (1982). Reading the instructions "in their entirety to determine their probable impact on the jury's perception of the fact-finding function," *Commonwealth* v. *Bousquet*, 407 Mass. 854, 865 (1990), we conclude that the judge gave the jury clear directions by which to distinguish between the crimes.

we do them. But they don't require any concentration or focusing of the mind."

[4]The defendant refers to this form of proof as "third-prong," "objective," "general," or "inferred" malice. See *Commonwealth* v. *Grey*, 399 Mass. 469, 472 n.4 (1987).

The judge began his instructions on the crimes comprehended within the indictment with an explanation of homicide. He proceeded from lawful homicide to self-defense to manslaughter and the use of excessive force. Next, he described murder in the first degree and removed that crime from the jury's consideration.[5] At the outset of the instructions on murder in the second degree, the judge emphasized that an unlawful killing "without the element of malice aforethought" is manslaughter and that malice is an "essential ingredient of murder." See *Commonwealth* v. *Boucher*, 403 Mass. at 662 n.2.

In defining the term malice aforethought, the judge explained that those words did "not necessarily" mean "ill-will." Rather, malice was "manifested," if at all, "by the motive and circumstances which attend and surround the fatal blow." Put yet another way: "If there was an intention on the part of the defendant to inflict injury upon the deceased, which was not justified on any lawful ground, or palliated by the existence of any mitigating circumstances, that intention was malicious within the meaning of the law." There was more: where there is "purposeful, selfish, wrongful motive, as distinguished from the frailty of human nature," there is malice aforethought. A malicious act is one which indicates a "heart devoid of social duty and fatally bent on mischief." Where the "circumstances disclose that the fatal blow is purposeful and wrongful and not the result of chance or frailty of humanity, there is malice aforethought."

Having conveyed the legal concept of malice, the judge then turned to the three alternative forms of its proof and delivered the instruction of which the defendant complains: "Malice may be inferred where a reasonable, prudent person in the circumstances known to the defendant would know according to common experience there was a probability of causing grievous bodily harm and a plain likelihood of death

---

[5]Having been found guilty of murder in the second degree at his first trial, the defendant was " 'implicitly acquitted' of the portion of the indictment[] charging murder in the first degree." *Commonwealth* v. *Batchelder*, 407 Mass. 752, 760 n.3 (1990).

as a result of his actions." Reading the judge's instructions as to this "technical expression in the law," *Commonwealth v. Madeiros*, 255 Mass. at 309, we view his explanation of "malice aforethought" as a correct compilation of decisional law from 1884 (*Pierce, supra*), forward.

Our conclusion does not, however, resolve the defendant's claim. The instructions on malice aforethought must be reviewed with those on involuntary manslaughter. After again instructing on voluntary manslaughter (self-defense and excessive force), the judge briefly recalled the evidence which entitled the defendant to the jury's consideration of involuntary manslaughter. It is the defendant's contention that, in defining "wanton or reckless conduct," the judge used language which essentially duplicated his formulation of malice aforethought. He argues that the phrase "grievous bodily harm" is so substantially similar to "gravity of the danger" that the distinction between the two types of homicide was "obliterated." *Commonwealth v. Parenti*, 14 Mass. App. Ct. at 701.

If these terms were lifted from the instructions and given a common usage, it might be reasonable to worry whether they were alike in implication. In the context of the judge's instructions, however, the meaning and use of these technical expressions remained separate and distinct. Compare *Commonwealth v. Parenti*, 14 Mass. App. Ct. at 698, where the judge defined involuntary manslaughter as "the intentional doing of a wanton or reckless act absent an intent to kill, but the act or acts are so dangerous, reckless and wanton that they are likely to cause death or grave bodily harm," and as "an unintentional killing which results from the doing of a wanton or reckless act that is likely to cause death or serious bodily injury." In the present case, the judge remained faithful to *Commonwealth v. Welansky*, 316 Mass. at 398-399.[6]

---

[6]We repeat his instruction. "[T]he Commonwealth must show that grave danger to others was apparent and the defendant chose to run the risk rather than alter his conduct so as to avoid the act or omission which caused the harm." Cf. *Commonwealth v. Catalina*, 407 Mass. 779, 789 (1990).

Just as the judge repeatedly told the jury that murder was the result of an act intended to cause death or grievous bodily harm, he also told them numerous times that involuntary manslaughter was the result of intentional conduct unintentionally causing death: "What is intended is the defendant's conduct, not the resulting harm."

Viewing these instructions against the backdrop painted by the judge, "a purposeful, selfish, wrongful motive" as distinguished from the "frailty of human nature," we think the jury could see clearly the distinction between the crimes and the verdicts available to them.

We see no error in the judge's instructions on murder and involuntary manslaughter, and we decline the defendant's invitation that we overrule more than one hundred years of law by doing away with the "largely but not . . . totally objective basis on which a jury may infer malice . . . ." *Commonwealth* v. *Grey*, 399 Mass. 469, 472 n.4 (1987). See also *Commonwealth* v. *Starling*, 382 Mass. at 428; *Commonwealth* v. *Batchelder*, 407 Mass. 753, 758 n. 2 (1990).

IV. *The Instructions on Intoxication.*

In his second claim of error, the defendant argues that the judge was wrong in refusing to allow the jury to consider the evidence of his intoxication in respect to his intent "to do an act creating a plain and strong likelihood that either death or grievous harm would follow."[7] This argument has been rejected on numerous occasions, most recently in *Commonwealth* v. *Batchelder*, 407 Mass. at 758 n.2: "[B]ecause malice aforethought may be found in the absence of specific intent to kill or to inflict grievous bodily harm, murder in the second degree cannot be said to require specific intent. See *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987); *Commonwealth* v. *Starling*, 382 Mass. 423, 428 (1981)."

*Judgments affirmed.*

---

[7]The judge did instruct the jury that they could consider the defendant's intoxication in respect to his ability to form the specific intent to kill or to do grievous bodily harm.