## Commonwealth *vs.* German Acevedo.

Middlesex. January 4, 2006. - April 4, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, New trial, Assistance of counsel. *Self-Defense. Malice. Constitutional Law,* Assistance of counsel.

The evidence on the record of a murder trial, viewed in the light most favorable to the defendant, warranted an instruction on reasonable provocation, and trial counsel's failure to request such an instruction deprived the defendant of an available, substantial ground of defense [442-446]; was manifestly unreasonable, given, among other factors, that provocation was not inconsistent with the principal defense theory (self-defense) and the defendant's testimony that he had not intended to kill the victim [446-450]; and created a substantial risk of a miscarriage of justice such as warranted the setting aside of the defendant's conviction and the ordering of a new trial [450-451].

Indictment found and returned in the Superior Court Department on December 13, 2000.

The case was tried before *Charles M. Grabau,* J., and a motion for a new trial, filed on September 25, 2003, was heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Leslie W. O'Brien* for the defendant.

*Kevin J. Curtin,* Assistant District Attorney *(Michael Bank,* Special Assistant District Attorney, with him) for the Commonwealth.

Spina, J. The defendant was indicted for murder in the first degree for the stabbing death of Charles McCullough during a fight. At trial, defense counsel argued for acquittal based on self-defense, and the trial judge instructed the jury on self-defense, voluntary manslaughter based on excessive force in self-defense, and involuntary manslaughter. The jury convicted the defendant of murder in the second degree. The defendant appealed from the conviction and filed a motion for a new trial,

arguing that the failure of the judge to instruct the jury on voluntary manslaughter based on reasonable provocation created a substantial risk of a miscarriage of justice, and that defense counsel's failure to request such an instruction constituted ineffective assistance. This motion was denied by the judge after a nonevidentiary hearing. The defendant's appeal from the order denying his motion for a new trial was consolidated with his direct appeal, and in an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed the order and the conviction. *Commonwealth* v. *Acevedo*, 63 Mass. App. Ct. 1106 (2005). We granted the defendant's application for further appellate review, and we now reverse both the order and the conviction.

1. *Background.* a. *The Commonwealth's case.* On November 17, 2000, Crystal Graham, a high school student, hosted a party at her home in Lowell after a school dance. Charles McCullough, Graham's former boy friend, attended the party.[1] When the defendant and four of his friends arrived at the party, they argued with McCullough, who accused them of stealing his headlights. Graham told the defendant and his friends to leave if they were going to fight, and they left the party.

Approximately forty-five minutes later, the defendant and his friends returned to the party.[2] Another argument involving the defendant and McCullough ensued. The argument escalated into a physical confrontation when two of the defendant's friends punched McCullough. Graham demanded that everyone leave, and the defendant and his friends suggested taking the fight outside. Once outside, McCullough challenged the defendant to fight "one on one," and they stepped toward each other, into the middle of a circle of people. McCullough, who was unarmed, punched the defendant in the head, and the defendant appeared to be punching McCullough's chest: no one else was involved in the fight. After ten seconds, McCullough fell back,

---

[1]McCullough was drinking beer at the party and had taken the drug commonly known as "ecstasy." Several of the Commonwealth's witnesses testified that McCullough appeared to be in a good mood that night, but the medical examiner testified that large amounts of "ecstasy" may cause paranoia or aggressive behavior.

[2]The defendant and his friends later testified that they drove around, drank beer, and smoked marijuana at one of their homes during this time.

holding his chest, and shouted that the defendant had stabbed him.

Although none of the Commonwealth's witnesses had seen a knife, McCullough had been stabbed five times. One wound penetrated his heart, and another perforated his liver: both injuries caused McCullough to lose a significant amount of blood quickly. McCullough collapsed in the street, and the defendant and his friends fled. When police arrived on the scene, at approximately 3 A.M., McCullough, still alive, was able to tell an officer that the defendant had stabbed him. He was pronounced dead when he arrived at a hospital.

The police questioned the defendant later that morning. During his first interview, the defendant told police that he left Graham's party because McCullough tried to start a fight with him. He later returned to the party, and a fight broke out. The defendant claimed that McCullough and his friends jumped on him and hit him when he tried to break up the fight.[3] The defendant denied that he had carried a knife or that he had stabbed anyone.

In a second interview, the defendant described in greater detail McCullough's aggressive behavior toward him when he arrived at the party.[4] He told police that several men from the party attacked him as he left, and he was able to escape with the help of his friends. The defendant said that McCullough was part of the group that attacked him, but he did not know whether McCullough had struck him. He again denied having a knife or stabbing McCullough.

The third time the defendant spoke to detectives that day he said that he and his friends left the party after McCullough started an argument, but McCullough and his friends followed them outside and insisted that they fight. He saw McCullough approach him with a clenched fist, then someone else knocked him to the ground, and four or five people started punching him in the head. Fearing for his life because he was outnumbered, the defendant pulled out his knife and swung it three or four

[3]The detectives noticed a small scrape near the defendant's left eye. The defendant did not indicate that he had any other injuries.

[4]The defendant's second and third police interviews were recorded, and the tape recordings and transcripts of these interviews were admitted at trial.

times. After he heard MuCullough say that he had been stabbed, he got into his friend's car and drove away. The defendant told the police that he did not intend to kill anyone that night: he stabbed McCullough because he was scared and trying to protect himself.

b. *The defendant's case.* The defendant did not deny stabbing McCullough, but his version of events differed significantly from the Commonwealth's. Testifying on his own behalf at trial, the defendant explained that he and his friends went to Graham's party, but they left because McCullough was "trying to start" trouble. They returned to the party later, hoping that more people had arrived. They again encountered McCullough, who started an argument with two of the defendant's friends that escalated into a physical confrontation. After McCullough challenged them to "rumble," the defendant decided to leave the party and ran outside, followed by his friends and other party guests. He tried to get into a friend's car, but, finding it locked, he joined his friends in the crowd that had gathered on the street. The defendant and his friends walked backward across the street as McCullough and his friends approached them. The defendant saw McCullough look at him, bite his lip, make a fist, and run toward him. Someone hit the side of the defendant's face, knocking him to the ground. He felt people beating him about the head and attempted to push them away, but could not. The defendant then pulled his knife from his pocket, opened it, and swung it several times.[5] After he heard McCullough cry out that he had been stabbed, he ran to his friend's car. The defendant threw the knife out the window as they drove over a bridge.

The defendant explained that he feared for his life because he was outnumbered and could not get away from his attackers: by his estimation, there were at least fifteen men, including Mc-Cullough, involved in the confrontation. On cross-examination, the defendant admitted that he could have run after discovering the cars were locked, but he did not want to leave his friends. He also acknowledged that McCullough was not the first person

[5]The defendant testified that the knife, which he carried for "protection" because he had been "jumped" before, had been in his pocket all night. He could not recall precisely how many times he swung the knife.

to hit him, and that when he fell backward, he could not see who was punching him.

Two of the defendant's friends who attended the party with him that night also testified for the defense.[6] They corroborated the defendant's testimony that he left the party after a fight started; that a large crowd gathered outside; and that a group of men, including McCullough, surrounded the defendant, knocked him to the ground, and hit him. Both witnesses testified that they saw McCullough punch the defendant twice before the group closed in on him.

c. *Instructions.* At the close of evidence, defense counsel orally requested jury instructions on manslaughter, without specifying a theory, and involuntary manslaughter.[7] The Commonwealth argued that jury instructions on any theory of manslaughter were not warranted because, even in the light most favorable to the defendant, the evidence did not show that he acted based on heat of passion, reasonable provocation, or sudden combat. The Commonwealth also argued that the defendant was not entitled to an instruction on self-defense. Over the Commonwealth's objection, the judge instructed the jury on self-defense, voluntary manslaughter based on excessive force in self-defense, and involuntary manslaughter. The judge did not provide instructions on reasonable provocation or sudden combat. Defense counsel did not object to the instructions.

On the second day of deliberations, the jury submitted a question to the judge, set out in the margin, asking if a manslaughter verdict could be returned if a dangerous weapon were involved in the killing.[8] While discussing the appropriate response, defense counsel stated that he had no objection to the

[6]One of Crystal Graham's neighbors, who witnessed the incident from his window, also testified for the defendant. He saw a large crowd gathered in the street, with three to five people in the middle, walking backward. He described "a commotion" at the center of the group, and what appeared to be people pushing and shoving each other. He heard a scream, then the crowd dispersed.

[7]Although defense counsel did not submit written requests for jury instructions on homicide, he did submit written requests for instructions on reasonable doubt and identification. He later withdrew his request for the instruction on identification.

[8]The full text of the question was: "Can a dangerous weapon be involved in the charges of manslaughter, or does the presence of a dangerous weapon bring the charges to second degree? If it is to be considered part of

judge's proposed instruction that the jury could not return a verdict for voluntary or involuntary manslaughter if they determined that the defendant had not acted in self-defense. The Commonwealth agreed, and the jury were so instructed.[9] On the third day of deliberations, the jurors submitted another question, inquiring if there were any mitigating circumstances, other than excessive force in self-defense, that could negate malice and reduce murder to manslaughter.[10] After discussing the issue with counsel, the judge reinstructed the jury on malice and informed them, again without objection, that there were no mitigating circumstances to consider other than excessive force in self-defense.[11] The jury returned their verdict finding the defendant guilty of murder in the second degree approximately forty minutes after the judge answered their second question.

The defendant timely appealed from his conviction. Later, represented by new counsel, he filed a motion for a new trial, arguing that the omission of a jury instruction on reasonable provocation created a substantial risk of a miscarriage of justice, and that trial counsel's failure to request such an instruction constituted ineffective assistance. The motion included an affidavit from trial counsel, who stated that he could not recall, or think of, any tactical reason not to request an instruction on provocation in this case. Following a nonevidentiary hearing, the judge denied the motion, concluding that the evidence at

manslaughter, please explain the correlation."

[9]In response to this question, the judge also instructed jurors that a dangerous weapon may be involved in manslaughter charges; they may, but need not, infer malice from the use of a dangerous weapon; and the relationship between a dangerous weapon and murder in the second degree depends on their evaluation of the evidence. In addition, and without objection, the judge provided each juror with a written outline of the elements of murder in the first degree, murder in the second degree, self-defense, voluntary manslaughter based on excessive use of force in self-defense, and involuntary manslaughter.

[10]The jurors' second question was: "Could you elaborate on malice? Please define all mitigating circumstances which should be considered in deciding malice. In other words, other than excessive force in self-defense, are there any other mitigating circumstances that would eliminate malice?"

[11]Both the Commonwealth and defense counsel saw excessive force in self-defense as the only potential mitigating factor in this case: defense counsel agreed with the Commonwealth when the prosecutor told the judge that "the heat of passion in the form of reasonable provocation or sudden combat was not — were not elements that were present here, and those theories were not instructed on."

trial, viewed in the light most favorable to the defendant, would not have warranted an instruction on reasonable provocation, even if that instruction had been requested. He declined to address the defendant's ineffective assistance claim because the defendant failed to demonstrate that a miscarriage of justice had occurred.

The defendant's direct appeal was consolidated with his appeal from the judge's order denying his motion for a new trial. In a memorandum and order affirming both the conviction and the order, the Appeals Court concluded that the absence of a jury instruction on reasonable provocation was not error because counsel did not request the instruction, and the trial judge was not obligated to provide one sua sponte. The court did not determine whether the evidence would have supported an instruction on reasonable provocation. The Appeals Court also characterized defense counsel's failure to request a reasonable provocation instruction as a "tactical" decision, "based on the hope that the jury would accept his argument of self-defense and return a verdict of not guilty, rather than a verdict of guilty on the lesser charge," and concluded that adopting such an "all-or-nothing" strategy did not constitute ineffective assistance. In a subsequent order denying the defendant's petition for rehearing, the Appeals Court clarified its reasoning on the ineffective assistance claim, explaining that trial counsel may have decided that a theory of provocation was inconsistent with the defendant's primary strategy of self-defense, and therefore could have confused the jury.

2. *Standard of review.* We review a judge's decision denying a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), "only to determine whether there has been a significant error of law or other abuse of discretion." *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986). "A motion for a new trial 'is addressed to the sound discretion of the trial judge, and . . . will not be reversed unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error.' " *Commonwealth* v. *Tennison*, 440 Mass. 553, 566 (2003), quoting *Commonwealth* v. *Russin*, 420 Mass. 309, 318 (1995). "Reversal for abuse of discretion is particularly rare where the judge acting on the motion was also

the trial judge" (citations omitted). *Commonwealth* v. *Lucien,* 440 Mass. 658, 670 (2004), quoting *Commonwealth* v. *Schand,* 420 Mass. 783, 787 (1995).

3. *Discussion.* The defendant makes two related claims in this appeal: (1) trial counsel was ineffective in failing to request a jury instruction on reasonable provocation; and (2) the judge erred in ruling, on the defendant's motion for a new trial, that he would not have been entitled to such an instruction, even if counsel had requested it. "[W]e review the defendant's motion for a new trial — whether based on the error itself or framed as a claim of ineffective assistance of counsel — solely to determine whether the error gives rise to a substantial risk of a miscarriage of justice." *Commonwealth* v. *Russell,* 439 Mass. 340, 345 (2003), citing *Commonwealth* v. *Randolph,* 438 Mass. 290, 293-296 (2002), and *Commonwealth* v. *Azar,* 435 Mass. 675, 685-687 (2002).

Ineffective assistance of counsel requires "behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," which "likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). The defendant must demonstrate that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977). A strategic or tactical decision by counsel will not be considered ineffective assistance unless that decision was "manifestly unreasonable" when made. *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978).

As a threshold matter, we must determine whether the defendant would have been entitled to a jury instruction on reasonable provocation had he requested one.[12] See, e.g., *Commonwealth* v. *DeMarco,* 444 Mass. 678, 685 (2005) (counsel not ineffective in failing to request instruction to which defendant not entitled). If requested, "[a] manslaughter instruction is required if, on 'any view of the evidence,' regardless of

---

[12]As the defendant conceded at oral argument, the judge was not required to instruct on reasonable provocation sua sponte. See *Commonwealth* v. *Berry,* 431 Mass. 326, 338 n.15 (2000) (judge not required to instruct on lesser offense in absence of request from counsel).

the credibility, manslaughter may be found." *Commonwealth* v. *Carrion*, 407 Mass. 263, 266-267 (1990), quoting *Commonwealth* v. *Pitts*, 403 Mass. 665, 667 (1989). We therefore view the evidence in the light most favorable to the defendant to determine whether an instruction on reasonable provocation was warranted. *Commonwealth* v. *Vanderpool*, 367 Mass. 743, 746 (1975). "However incredible the testimony of a defendant may be[,] he is entitled to an instruction based upon the hypothesis that it is entirely true." *Id.*, quoting *Commonwealth* v. *Campbell*, 352 Mass. 387, 398 (1967).

Voluntary manslaughter is an unlawful killing "arising not from malice, but 'from . . . sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense.' " *Commonwealth* v. *Carrion, supra* at 267, quoting *Commonwealth* v. *Nardone*, 406 Mass. 123, 130-131 (1989). Reasonable provocation is provocation that "would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint." *Commonwealth* v. *Walden*, 380 Mass. 724, 728 (1980). A jury instruction on reasonable provocation is warranted "if there is evidence of provocation deemed adequate in law to cause the accused to lose his self-control in the heat of passion, and if the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool." *Commonwealth* v. *Andrade*, 422 Mass. 236, 237 (1996), quoting *Commonwealth* v. *Schnopps*, 383 Mass. 178, 180 (1981), *S.C.*, 390 Mass. 722 (1984). The defendant's actions must be "both objectively and subjectively reasonable. That is, the jury must be able to infer that a reasonable person would have become sufficiently provoked and would not have 'cooled off' by the time of the homicide, and that in fact a defendant was provoked and did not cool off." *Commonwealth* v. *Groome*, 435 Mass. 201, 220 (2001), quoting *Commonwealth* v. *McLeod*, 394 Mass. 727, 738, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985).

The defendant presented adequate evidence of reasonable provocation. He testified that, as he left the party, he was surrounded by McCullough and his friends, who repeatedly punched him in the head. He further testified that these men

knocked him to the ground, and that he feared for his life because he was outnumbered by his attackers. Such testimony, if credited, could demonstrate "fear, fright, or nervous excitement" on the part of the defendant, sufficient to overcome a reasonable person's "capacity for reflection or restraint."[13] See *Commonwealth* v. *Walden, supra.*

It is well established that "provocation must come from the victim." *Commonwealth* v. *Ruiz,* 442 Mass. 826, 838-839 (2004), and cases cited. The Commonwealth contends that the defendant was not entitled to an instruction on provocation because, even considering the defendant's own testimony, there was no evidence of adequate provocation from McCullough: the defendant could state with certainty only that McCullough looked at him, made a fist, and ran toward him, not that he actually struck him. We do not agree with the Commonwealth's contention. Several defense witnesses, including the defendant, testified that McCullough was part of a group of young men who surrounded the defendant, knocked him down, and beat him. Although the defendant testified that he could not see which of the men struck the blows, two defense witnesses testified that they saw McCullough strike the defendant twice. At times, even a single blow from the victim can constitute reasonable provocation.[14] See *Commonwealth* v. *Maskell,* 403 Mass. 111, 116-117 (1988); *Commonwealth* v. *Weaver,* 395 Mass. 307,

---

[13]The Commonwealth claims that the actual provoking fact in this case was McCullough's accusation that the defendant stole his headlights, and that any provocation arising from that accusation should have dissipated by the time the defendant returned to the party forty-five minutes later. In other words, the Commonwealth, citing *Commonwealth* v. *Amaral,* 389 Mass. 184, 189 (1983), argues that a reasonable person would have "cooled off" by the time he returned to the party, and therefore the defendant's actions were not objectively reasonable. "The problem with the Commonwealth's characterization of the evidence is that it adopts a view of that evidence that is sympathetic to the Commonwealth's position." *Commonwealth* v. *Rodriguez,* 58 Mass. App. Ct. 610, 613 (2003). The defendant maintains that the provocation occurred not when words were exchanged at the party earlier in the night, but outside in the street, when McCullough and his friends charged at him, knocked him to the ground, and punched him in the head. According to defense witnesses, this occurred immediately before the stabbing, and if their testimony is credited, the defendant's emotions would not have had time to cool.

[14]The Commonwealth correctly notes that "physical contact between a defendant and a victim is not always sufficient to warrant a manslaughter instruction, even when the victim initiated the contact." *Commonwealth* v.

312 (1985). "Whether the contact is sufficient will depend on whether a reasonable person under similar circumstances would have been provoked to act out of emotion rather than reasoned reflection." Model Jury Instructions on Homicide 29 (1999). See *Commonwealth* v. *Pierce*, 419 Mass. 28, 31-32 (1994). A jury could conclude that a reasonable person in the defendant's position would have felt an "immediate and intense" threat, and lashed out in fear as a result.[15] *Commonwealth* v. *Amaral*, 389 Mass. 184, 189 (1983), citing *Commonwealth* v. *Bermudez*, 370 Mass. 438, 442 (1976).

Where the evidence supports it, "the defendant is entitled to correct instructions on both provocation and self-defense, and the jury are to have an opportunity to consider voluntary manslaughter on both theories." *Commonwealth* v. *Lapage*, 435 Mass. 480, 486 n.7 (2001). "[C]orrect instructions on self-defense and excessive use of force in self-defense do not cure an erroneous instruction on provocation," or eliminate the

---

*Ruiz*, 442 Mass. 826, 839 (2004), quoting *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980). However, the cases cited by the Commonwealth to support its claim that the contact could not constitute reasonable provocation are distinguishable. For example, in *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 321 (1973), *S.C.*, 390 Mass. 722 (1984), and *Commonwealth* v. *Ruiz*, *supra*, we concluded the victim's actions could not be considered reasonable provocation because they posed no threat of serious harm to the defendant, but here, a jury could find that the defendant reasonably believed that he was at risk of serious harm after being knocked down and beaten by a group of angry men. Similarly, although in *Commonwealth* v. *Masello*, 428 Mass. 446, 450 (1998), we found "scant evidence that the victim had attacked the defendant or struck any blows," the defendant in this case testified that he was attacked by a group of people, including McCullough, who punched him repeatedly in the face and head, and two defense witnesses testified that they saw McCullough hit the defendant in the head.

[15]This case is factually similar to *Commonwealth* v. *Rodriguez*, *supra* at 613-614, in which the Appeals Court held that a provocation instruction was warranted based on the defendant's statement that he stabbed the victim because he felt threatened when a group of men charged at him during a fight: "I see like, like five of the guys or probably less or more than that running towards me. I felt threatened. That's when I closed my eyes, ya know and pulled out my knife, ya know. And I did what I did." Here, as in the *Rodriguez* case, if the jury believed the defendant's version of events, "they could permissibly have concluded that there was a reasonable doubt whether the defendant acted upon reasonable provocation . . . thereby precluding a conviction of murder in the second degree." *Id.* at 613, 614, citing *Commonwealth* v. *Berry*, 431 Mass. 326, 335 (2000) ("jury could have determined that, as result of escalating hostility, defendant lashed out at victim in heat of passion").

prejudice created by the absence of a proper instruction on that theory of voluntary manslaughter. *Commonwealth* v. *Sirois*, 437 Mass. 845, 855-856 n.12 (2002). Trial counsel's failure to request an instruction on reasonable provocation, therefore, deprived the defendant of a substantial available defense. *Commonwealth* v. *Saferian*, *supra*.

The Commonwealth suggests that trial counsel's failure to request a provocation instruction did not deprive the defendant of a viable defense because, if the jury did not believe that the defendant acted in self-defense, or that he used excessive force in self-defense, they would not believe that he acted based on reasonable provocation. We disagree. The fact that the jury convicted the defendant of murder in the second degree does not necessarily mean that they completely rejected the defendant's version of events, or that they would have rejected a theory of provocation. The jury could have believed that the defendant reasonably was in fear, but that he did not retreat and therefore lost the right to use self-defense, or that he did not have the right to use deadly force because McCullough was unarmed. See *Commonwealth* v. *Toon*, 55 Mass. App. Ct. 642, 644-645 (2002), quoting *Commonwealth* v. *Harrington*, 379 Mass. 446, 450 (1980). This would prevent the jury from finding that the killing was excused as self-defense, or that the killing was voluntary manslaughter resulting from the excessive use of force in self-defense, but it would not preclude a conviction of voluntary manslaughter based on reasonable provocation. See *Commonwealth* v. *Roberts*, 433 Mass. 45, 57 (2000) (if Commonwealth demonstrates that defendant had no right to self-defense, voluntary manslaughter on theory of excessive force in self-defense not available).

To establish a claim of ineffective assistance, the defendant also must show that trial counsel's decision not to request a provocation instruction was "manifestly unreasonable" when made. *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). The Commonwealth argues that defense counsel's failure to request an instruction on provocation was a reasonable tactical decision because provocation was inconsistent with both the principal defense theory (self-defense) and the defendant's statement that he did not intend to kill McCullough. The Com-

monwealth maintains that trial counsel pursued defenses —
self-defense, excessive force in self defense, and involuntary
manslaughter — that were consistent with the defendant's
testimony, and that provocation would have undermined these
arguments. The defendant, however, claims that it was
manifestly unreasonable for trial counsel to fail to request an
instruction on reasonable provocation because provocation was
consistent with other defense theories, and because excessive
force in self-defense was more difficult to prove than provoca-
tion in this case.

Assuming that trial counsel's decision not to request a
provocation instruction was tactical, we conclude that it was
manifestly unreasonable.[16] Trial counsel did not pursue an "all-
or-nothing" strategy, as characterized by the Appeals Court. His
request for jury instructions on voluntary and involuntary
manslaughter indicates that he wanted the jury to have the op-
tion of convicting the defendant of the lesser offenses: it was
the Commonwealth that objected to these instructions.[17] The
defendant had nothing to lose — and much to gain — by

[16]The defendant also argues that trial counsel's decision not to request a
provocation instruction was not a tactical decision, implying that trial counsel
simply overlooked this potential defense. The defendant bases this claim on
(1) the affidavit from trial counsel in support of his motion for a new trial, in
which trial counsel could not recall any reason for not requesting an instruc-
tion on reasonable provocation, and (2) the fact that trial counsel did not
specify a particular theory when he requested an instruction on voluntary
manslaughter. We agree that failing to recognize that provocation could be a
mitigating factor in this case would be "serious incompetency, inefficiency, or
inattention of counsel . . . falling measurably below that which might be
expected." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). However, we
find it unlikely, based on our reading of the record, that trial counsel failed to
consider provocation altogether: the Commonwealth mentioned reasonable
provocation at the charge conference, in its closing argument, and when
discussing the jury questions. Trial counsel even agreed with the Com-
monwealth that the evidence did not support voluntary manslaughter on a
theory of reasonable provocation, a strong indicator that trial counsel had at
least considered the issue.

[17]The judge informed the jury that they could not return a verdict of
involuntary manslaughter, as a matter of law, if they were persuaded beyond a
reasonable doubt that the defendant did not act in self-defense. This is not a
correct statement of the law: if the jury found that the defendant's conduct
was "wanton or reckless," but did not rise to the level of third prong malice,
they should have been able to convict the defendant of involuntary
manslaughter, even if they did not believe he acted in self-defense. See *Com-*

advocating all available theories of voluntary manslaughter. In fact, provocation well may have been a "more accommodating" theory for the defendant, as neither self-defense nor excessive force in self-defense would be available if the jury determined that the defendant was not justified in using deadly force against an unarmed person, or that the defendant could have retreated. *Commonwealth* v. *Walker*, 443 Mass. 213, 218-219 (2005). See *Commonwealth* v. *Toon, supra.*

Contrary to the Commonwealth's assertion, provocation was consistent with the other defense theories. Self-defense (or excessive force in self-defense) and provocation are not "mutually exclusive." *Commonwealth* v. *Sirois, supra. Commonwealth* v. *Lapage, supra.* See *Commonwealth* v. *Walker, supra* at 221-222 (noting all theories of voluntary manslaughter require proof of intentional infliction of injury to victim, in response to victim's conduct). The theory of self-defense does not "automatically" incorporate a theory of reasonable provocation; for example, a provocation instruction is not appropriate when a defendant claims to have acted in self-defense but presents no evidence about his emotional state, or when a defendant argues self-defense but denies experiencing strong feelings of passion, anger, fear, fright, or nervous excitement. See *Commonwealth* v. *Sirois, supra* at 854-855 (no evidence of provocation where defendant's statement contained no information relating to his emotional state); *Commonwealth* v. *Vinton*, 432 Mass. 180, 189 (2000) (instruction on provocation not warranted where defendant acted in self-defense based on "calculus of survival, not any blindness of heat of passion on reasonable provocation"). At times, however, a defendant's statements or testimony may raise issues of both self-defense and provocation, and in such circumstances, these theories may be compatible. See *Commonwealth* v. *Walker, supra* at 222

---

*monwealth* v. *Sullivan*, 29 Mass. App. Ct. 93, 95 n.2 (1990) ("The jury could have disbelieved the defendant's assertion of self-defense, and . . . found that he acted recklessly and wantonly when he withdrew and swung his knife blindly and heedlessly"). This likely compounded the prejudice to the defendant created by trial counsel's failure to request an instruction on provocation, by depriving the jury of the opportunity to find the defendant guilty of another lesser offense. This issue is not before us: trial counsel did not object to this instruction, and the defendant did not raise this issue on appeal. However, we mention it now lest it recur should this case be retried.

("Whether the defendant stabbed [the victim] because [the victim] reasonably provoked anger or fear in him by pushing him . . . or instilled the fear of death or serious bodily harm in him by pushing him . . . the jury's focus when deciding whether and under what theory manslaughter was committed would be nearly equivalent, both factually and legally"). Here, the defendant testified that he was "scared" when McCullough and others attacked him, and that he struck out with a knife to defend himself; it would not have been inconsistent for trial counsel to argue both that the defendant was defending himself and that he was reasonably provoked. See *Commonwealth* v. *Vinton, supra* (defendant, already entitled to self-defense instruction, might have raised issue of provocation by testifying that he was scared by victim during fight).

Moreover, an instruction on reasonable provocation would not have been inconsistent with the defendant's testimony that he did not intend to kill McCullough. The defendant's statement was consistent with two forms of malice: intent to do grievous bodily injury (second prong malice) and intent to commit an act with a plain and strong likelihood that death would result (third prong malice). See, e.g., *Commonwealth* v. *Sneed*, 413 Mass. 387, 388 n.1 (1992) (defining three prongs of malice). A killing "is voluntary manslaughter, not murder, if malice is negated by reasonable provocation or sudden combat." *Commonwealth* v. *Boucher*, 403 Mass. 659, 663 (1989). Reasonable provocation thus mitigates all forms of malice, and an instruction on provocation would not have been inconsistent with the defense or contradicted the defendant's testimony.[18] Cf. *Commonwealth* v. *Keohane*, 444 Mass. 563, 569-570 (2005) (manslaughter instruction inconsistent with defense theory that someone else killed victim); *Commonwealth* v. *Bockman*, 442 Mass. 757, 768 (2004) (provocation instruction inconsistent with defendant's

[18]Voluntary manslaughter under a theory of excessive force in self-defense also involves an intentional killing. See Model Jury Instructions on Homicide 31 (1999) (voluntary manslaughter based on excessive force in self-defense is an "intentional, unlawful killing"). By the Commonwealth's logic, this theory too would be "inconsistent" with the defendant's statement that he did not intend to kill McCullough. The Commonwealth, however, does not make this argument; in fact, the Commonwealth concedes that the defendant's testimony could support voluntary manslaughter under this theory.

claim that he was not present when victim was killed); *Commonwealth* v. *Doucette*, 391 Mass. 443, 458 (1984) (instruction on intoxication may have undermined claim that defendant acted in self-defense).

We recognize that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Commonwealth* v. *Florentino*, 396 Mass. 689, 690 (1986). However, even were we to conclude that trial counsel's initial decision not to request a provocation instruction was reasonable, it plainly was unreasonable to maintain that strategy when the jury submitted their second question, inquiring whether any mitigating factors other than excessive force in self-defense could eliminate malice. This question strongly suggests that the jurors were unlikely to acquit based on self-defense, but they were willing to consider mitigation on some other ground. However, trial counsel again failed to request a provocation instruction: instead, trial counsel agreed with the Commonwealth that no other mitigating factors existed, and the judge so instructed the jury.

A substantial risk of a miscarriage exists "if we have a serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999), citing *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). Although we cannot be certain that the jury would have returned a verdict of voluntary manslaughter had they been instructed on reasonable provocation, it appears to be a real possibility in this case. The jury need not have been convinced beyond a reasonable doubt that the defendant reasonably was provoked: they only would need to harbor a reasonable doubt on the issue. *Commonwealth* v. *Acevedo*, 427 Mass. 714, 716 (1998) (when defendant raises issue of reasonable provocation, burden on Commonwealth to prove beyond reasonable doubt that defendant acted with malice by demonstrating that defendant was not reasonably provoked). The Commonwealth's case was strong but not overwhelming: the Commonwealth's witnesses testified that the fight involved only McCullough and the defendant, and that the defendant was the instigator, whereas defense witnesses testified that the defendant

was attacked by McCullough and others.[19] The jury's second question strongly suggests their willingness to consider other mitigating factors, the evidence supported an instruction on reasonable provocation, and the theory of provocation was consistent with the other defense theories. Accordingly, we conclude that trial counsel's failure to request an instruction on reasonable provocation manifestly was unreasonable, deprived the defendant of an available, substantial ground of defense, and created a substantial risk of a miscarriage of justice.

4. *Conclusion.* For the foregoing reasons, the judgment is reversed, the verdict set aside, and the order denying the defendant's motion for a new trial is reversed. We remand the case to the Superior Court for trial.[20]

*So ordered.*

---

[19]The jury's decision to convict the defendant of murder in the second degree, rather than murder in the first degree, shows that they rejected the Commonwealth's theory of deliberate premeditation. Contrast *Commonwealth v. Vinton*, 432 Mass. 180, 189-190 (2000).

[20]The defendant may not be retried for murder in the first degree because he effectively was acquitted of that charge when the jury found him guilty of murder in the second degree. See *Commonwealth v. Berry*, 431 Mass. 326, 336 n.13 (2000).