COMMONWEALTH *vs.* JOHN GRAY. October 17, 2013. *Motor Vehicle,* Operating under the influence. *Practice, Criminal,* Motion to suppress. *Search and Seizure,* Roadblock by police. *Constitutional Law,* Search and seizure, Roadblock by police.

The defendant was charged with operating under the influence of alcohol (OUI), third offense, after he was stopped, and subsequently arrested, at a sobriety checkpoint conducted by the State police in September, 2010. He filed a motion to suppress evidence related to his arrest, arguing that the screening officer — the officer who made the initial stop of the vehicles passing through the checkpoint — failed to comply with the applicable guidelines for that specific checkpoint. After a hearing, a judge of the District Court allowed the motion. The Commonwealth thereafter sought leave from a single justice of this court to pursue an interlocutory appeal. The single justice allowed the Commonwealth's application and directed the appeal to the Appeals Court.

The Commonwealth argued before the Appeals Court that the key finding of fact that formed the basis of the judge's decision to allow the motion was clearly erroneous. The judge had found that the screening officer, Sergeant Paul D'Auteuil, improperly asked the defendant questions such as where he was coming from and whether he had had anything to drink *before* Sergeant D'Auteuil had observed any articulable signs of intoxication. Sergeant D'Auteuil clearly testified at the hearing on the motion to suppress, however, that he had not asked any questions of the defendant (or any other driver pass-

ing through the sobriety checkpoint) until *after* he had observed signs of possible intoxication. There was no evidence to the contrary. The Commonwealth also argued, before the Appeals Court, that the guidelines applicable to the checkpoint allowed Sergeant D'Auteuil to question the defendant as he had — after observing signs of intoxication — and that if the judge had not erred in finding that Sergeant D'Auteuil had questioned the defendant before observing signs of intoxication, the judge would have denied the motion to suppress because what Sergeant D'Auteuil actually did complied with the applicable guidelines.

A panel of the Appeals Court agreed with the Commonwealth that the judge's decision was based on a clearly erroneous fact and, on that basis, reversed the order allowing the motion to suppress in an unpublished order and memorandum pursuant to its rule 1:28. The court did not specifically address the guidelines issue. The case is now before this court on further appellate review.

The parties do not disagree that the judge based his decision to allow the motion to suppress on an erroneous finding of fact. They do disagree, however, as to whether Sergeant D'Auteuil had the authority to question the defendant before directing him to the secondary screening area. That question turns on what constituted the guidelines applicable to the particular sobriety checkpoint at which the defendant was stopped. As the parties recognize, a sobriety checkpoint must be conducted in strict compliance with the written guidelines applicable to that particular checkpoint. See *Commonwealth* v. *Murphy*, 454 Mass. 318, 323, 328 n.9 (2009), and cases cited. Because stopping a vehicle at a fixed roadblock "constitutes a warrantless seizure of that vehicle and its driver without individualized suspicion under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights," a sobriety checkpoint must "be governed by standard, neutral guidelines that clearly forbid the arbitrary selection of vehicles to be initially stopped." *Id.* at 322-323, and cases cited. Those guidelines, in turn, must be strictly adhered to. See *id.* at 327-328 & n.9.

The order directing that the checkpoint be conducted at a certain date and time, and at a particular location, issued by State police Major Sean Baxter, provided that the checkpoint would be conducted in accordance with State police General Order TRF-15 (TRF-15) and the "written operations plan" approved by Major Baxter. The Commonwealth argues that the "written operations plan" includes State police Division Commander's Order 10-DFS-35 (10-DFS-35); the defendant disagrees. Whether 10-DFS-35 applied to the checkpoint is the key point that must be resolved.

TRF-15 provides that, if the screening officer forms a "reasonable suspicion, based upon articulable facts, that the operator and/or passenger(s) is committing or has committed an OUI violation or other violation of law, that vehicle shall be directed from the normal flow of traffic and the offender(s) checked further." TRF-15 does not authorize the screening officer to question a driver about the consumption of alcohol.[1] 10-DFS-35, in contrast, does specifically authorize such questioning: "If the screener observes articulable sign(s) of possible intoxication, he or she may engage in brief conversation about the

---

[1]The Commonwealth argued in the trial court that State police General Order TRF-15 allowed Sergeant D'Auteuil, as a screening officer, to question the defendant, but does not press that argument on appeal.

consumption of alcohol."[2] If, therefore, 10-DFS-35 applied to the checkpoint, Sergeant D'Auteuil's questions to the defendant, asked, as they were, after Sergeant D'Auteuil formed a reasonable suspicion that the defendant was intoxicated, were proper.

In his order allowing the defendant's motion to suppress, the judge made certain findings regarding 10-DFS-35, such as what it states, but he made no specific finding as to whether 10-DFS-35 applied to the checkpoint in question. Ultimately he concluded that the Commonwealth did not prove strict adherence to TRF-15 or the constitutional guidelines regarding sobriety checkpoints set forth in *Commonwealth* v. *Trumble*, 396 Mass. 81 (1985), and noted that Sergeant D'Auteuil's questioning of the drivers passing through the checkpoint *prior* to observing signs of intoxication was not in accordance with TRF-15, 10-DFS-35, or *Trumble*. It may have been that, in the judge's view, there was no need to decide whether 10-DFS-35 applied because he would have allowed the defendant's motion to suppress regardless. In other words, based on the (erroneous) finding that Sergeant D'Auteuil improperly questioned drivers before observing signs of intoxication, it did not matter whether 10-DFS-35 applied: if 10-DFS-35 did apply, Sergeant D'Auteuil's questioning was improper because it occurred before he observed signs of intoxication and 10-DFS-35 provides that such questioning can only occur after observing such signs; if 10-DFS-35 did not apply, the questioning was improper because nothing else authorized any questioning by the initial screening officer.

Because, however, as we have noted and as the parties agree, the judge's key finding as to the timing of the questioning was erroneous, it becomes necessary to determine whether 10-DFS-35 applied, i.e., whether 10-DFS-35 was part of the "written operations plan" that governed this particular checkpoint. If 10-DFS-35 did apply, Sergeant D'Auteuil's questions were proper and the motion to suppress should not have been allowed; if 10-DFS-35 did not apply, Sergeant D'Auteuil's questions were improper, and the motion to suppress was correctly allowed because the checkpoint was not conducted in accordance with the applicable guidelines. A factual finding must be made, by the judge, as to the applicability of 10-DFS-35.

We therefore vacate the order allowing the motion to suppress and remand the case for further proceedings in accordance with this opinion.

*So ordered.*

*Jane Larmon White*, Committee for Public Counsel Services, for the defendant.

*Michelle R. King*, Assistant District Attorney, for the Commonwealth.

---

[2]State police Division Commander's Order 10-DFS-35 provides, in relevant part:

"The officer making the *initial* contact with an operator, hereinafter referred to as the 'screener,' shall make a brief and courteous statement to the operator of the motor vehicle, such as 'Good evening, this is a State Police sobriety checkpoint. We're checking all operators for sobriety. Sorry for the inconvenience.' If the screener observes articulable sign(s) of possible intoxication, he or she may engage in brief conversation about the consumption of alcohol.

"If the screener develops reasonable suspicion based on articulable facts that the operator and/or passenger(s) is committing or has committed an OUI violation or other violation of law, said operator and vehicle shall be diverted into the testing area or 'pit' for further inquiry."