NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-947                                        Appeals Court

COMMONWEALTH  vs.  JASON A. GARCIA-GERMAN.

No. 15-P-947.

Plymouth.     October 13, 2016. - December 20, 2016.

Present:  Cypher, Cohen, & Green, JJ.

Search and Seizure, Motor vehicle, Probable cause,
    Administrative inspection. Probable Cause. Constitutional
    Law, Search and seizure, Probable cause.

Complaint received and sworn to in the Plymouth Division of
the District Court Department on September 2, 2014.

A pretrial motion to suppress evidence was heard by Brian
F. Gilligan, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Robert J. Cordy, J., in the Supreme
Judicial Court for the county of Suffolk, and the matter was
reported by him to the Appeals Court.

Gail M. McKenna, Assistant District Attorney, for the
Commonwealth.
Darla J. Mondou for the defendant.

GREEN, J.  The Commonwealth appeals from an order by a

judge of the District Court allowing the defendant's motion to

suppress evidence seized during a warrantless search of his vehicle while it was parked in a parking lot outside the Plymouth County correctional facility (facility).[1]  We conclude that the motion judge correctly ruled that the search was not justified by probable cause, and reject the Commonwealth's alternative suggestion that the presence of the vehicle on correctional facility grounds, in these circumstances, furnished "special needs" to justify an exception to the warrant requirement, as a permissible administrative search.

Background.  We summarize the facts found by the motion judge, which we supplement, for the purpose of furnishing context, with uncontroverted evidence the motion judge implicitly credited.  See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

At approximately 7:30 P.M. on Friday evening, August 29, 2014, Officer James Creed of the Plymouth County sheriff's department was on patrol in the parking lot of the facility, when he saw two motor vehicles -- a gray BMW and a gray Volvo -- enter the visitor's lot.  Two Hispanic males, the defendant and a companion, emerged from the BMW, and a white male, later identified as an attorney, emerged from the Volvo.  All three men entered the bail lobby of the facility.  At the time of

_____

[1] A single justice of the Supreme Judicial Court granted leave to pursue this interlocutory appeal, pursuant to Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996).

their arrival, visiting hours at the facility had ended; the three men had come to the facility for the purpose of posting bail for a person being held there.

Officer Creed proceeded to the parked vehicles, walked around each of them, and conducted a visual inspection. He saw a prescription pill bottle, face down, in the map pocket on the driver's side of the BMW. Using his flashlight to improve illumination, he saw a small quantity of white pills and a small plastic bag containing blue pills within the pill bottle. He then requested registration information for the BMW.[2]

Officer Creed proceeded to the bail lobby of the facility, where he talked to the defendant and instructed him to accompany Creed back to the BMW. When the two reached the BMW, Creed instructed the defendant to unlock the vehicle to allow an inspection of its interior; the defendant complied with Creed's instruction.[3] After the defendant unlocked the vehicle, Creed opened the prescription pill bottle and inspected its contents; the white pills appeared to him to be an antibiotic, and the

---

[2] Officer Creed testified that he did not request information for the Volvo, as his observations of its interior elicited nothing suspicious.

[3] The officer did not request the defendant's consent, and the Commonwealth does not suggest that the defendant's compliance with the officer's instruction constituted consent. See Commonwealth v. Rogers, 444 Mass. 234, 237 (2005) (to establish consent, Commonwealth must show "something more than mere 'acquiescence to a claim of lawful authority'" [citation omitted]).

blue pills appeared to him, based on his training and experience, to be oxycodone. Creed also discovered a quantity of heroin, wrapped in plastic, inside the center console between the driver's and the front passenger's seats. He then requested canine assistance; with the assistance of a canine, he subsequently discovered about $700 in cash in a small storage area under the radio.

At the entrance to the parking lot of the facility is a guard shack.[4] Adjacent to the guard shack a sign is posted, advising as follows: "Warning: all vehicles beyond this point are subject to search."[5] Other than the warning delivered by the posted sign, the record includes no evidence of a written policy authorizing or regulating routine or random searches of vehicles entering the parking lot.

Discussion. a. Probable cause. The Commonwealth contends that Officer Creed's observation of a prescription pill bottle containing both white and blue pills, the latter in a separate

_____

[4] We note that, although the photographs of the parking lot admitted as exhibits at the motion hearing were not included in the record appendix or otherwise transmitted to this court, the hearing transcript makes clear that the parking lot is enclosed by a fence, so that only persons and vehicles passing through the entrance at the guard shack would have the opportunity to bring items into the parking lot.

[5] A photograph of the warning sign apparently was admitted in evidence as an exhibit at the motion hearing, but it (along with the other hearing exhibits, see note 4, supra) was not included in the record appendix or otherwise transmitted to this court.

plastic bag, furnished probable cause to believe that the pill bottle contained illegal narcotics, thereby justifying a warrantless search of the vehicle.  Like the motion judge, we disagree.

At the time Officer Creed instructed the defendant to unlock the BMW to allow access to the vehicle interior, the sole factor suggesting the presence of contraband in the vehicle was Creed's observation of a prescription pill bottle containing two different colors of pills.[6]  However, the illegal character of the blue pills was not apparent to the officer; it was not until he gained access to the interior of the vehicle, opened the bottle, and examined the contents more closely that he formed a belief that the blue pills were oxycodone.[7]  See Commonwealth v.

---

[6] The Commonwealth suggests that additional support for probable cause may be drawn from the officer's testimony that he also observed two cellular telephones in the vehicle, a fact the motion judge did not mention in his findings.  We need not speculate whether his failure to enter a finding on the topic reflected a disbelief of the officer's testimony, because we consider the presence of cellular telephones in the vehicle to be immaterial to the question of probable cause.  Although multiple cellular telephones, combined with other accoutrements of the drug trade, have contributed to proof of criminal activity in certain circumstances, see, e.g., Commonwealth v. Suarez, 59 Mass. App. Ct. 111, 115-116 (2003), the observation of two cellular telephones in a vehicle recently occupied by two individuals adds nothing of consequence to the calculus of probable cause in the present case.

[7] We note as well that Officer Creed's observation of the blue pills would not, in these circumstances, have furnished probable cause of criminality even if he had recognized them as oxycodone; the label of the prescription bottle was not visible

White, 469 Mass. 96, 102 (2014) (plain view observation of unlabeled prescription pill bottle did not justify warrantless seizure, as character of its contents as contraband was not "immediately apparent" from observation alone [citation omitted]).  See also Commonwealth v. Garcia, 34 Mass. App. Ct. 645, 651 (1993) (observation of "empty baggie" capable of both lawful and unlawful use does not furnish probable cause to justify warrantless search or seizure).

b.  Administrative (or special needs) search.  In the alternative, the Commonwealth suggests that entry into and search of the vehicle was justified as an administrative or special needs search.  As framed by the Commonwealth, the justifiable concern of facility officials for the possibility that weapons or contraband could be brought onto facility grounds and made available to prisoners, as reflected in G. L. c. 127, § 33,[8] and the fact that, as provided in G. L. c. 127,

___

to him, and he could not plausibly have ascertained from his vantage point peering through the window of the locked vehicle whether the pills were a medication validly prescribed to the defendant or another occupant of the vehicle.

[8] General Laws c. 127, § 33, as amended by St. 1979, c. 485, § 22, states as follows:

"The superintendents of all institutions under the jurisdiction of the department of correction and the superintendents and keepers of jails and houses of correction shall cause all necessary means to be used to maintain order in the institutions under their supervision, enforce obedience, suppress insurrection and prevent

§ 36,[9] no one has the right to visit a penal institution without the permission of the superintendent or jail keeper, combine to justify routine searches of persons and vehicles that enter onto the facility grounds.  Based on that justification, the Commonwealth's argument continues, the sign posted at the parking lot entrance, warning that all vehicles are subject to search, operates to divest all persons driving a vehicle into the facility parking lot of any reasonable expectation of privacy in their vehicle.

It is settled that "area-entry inspections at court house entrances, for safety and security purposes, are permissible without a warrant or individualized suspicion of wrongdoing or danger."  Commonwealth v. Roland R., 448 Mass. 278, 281 (2007). "Where a search of persons entering a public place is necessary

---

escapes, and for that purpose they may at all times require the aid and utmost exertions of all the officers of the institution except the chaplain and the physician."

[9] General Laws c. 127, § 36, as appearing in St. 1962, c. 142, states as follows:

"No person except [enumerated officials not relevant here] may visit any . . . jail or house of correction in the commonwealth without the permission of the commissioner or of the superintendent of such institution or of the keeper of such jail or house of correction.  Every visitor who is required to obtain such permission shall also make and subscribe a statement under the penalties of perjury stating his true name and residence, whether or not he has been convicted of a felony, and, if visiting an inmate of such institution, his relationship by blood or marriage, if any, to such inmate, and, if not so related, the purpose of the visit."

to protect a sensitive facility from a real danger of violence, an 'administrative search' without a warrant may be justified. 'The search must be limited and no more intrusive than necessary to protect against the danger to be avoided, but nevertheless reasonably effective to discover the materials sought. The inspection must be conducted for a purpose other than the gathering of evidence for criminal prosecutions.'" Commonwealth v. Harris, 383 Mass. 655, 657 (1981) (citation omitted). Among the considerations applicable to an assessment of the intrusiveness of an administrative search program are whether persons subject to search have prior notice, see Commonwealth v. Carkhuff, 441 Mass. 122, 128 (2004),[10] and whether the parameters of the search established by statute or policy are sufficiently defined and constrained to limit the discretion of officials conducting the search, see Commonwealth v. Eagleton, 402 Mass. 199, 204-205 (1988). As in the case of inventory searches, see Commonwealth v. Garcia, 409 Mass. 675, 681 (1991), or storage searches, see Commonwealth v. Ford, 394 Mass. 421, 426 (1985), written policies and procedures serve to ensure that an administrative search is conducted consistently with the neutral

---

[10] Prior notice does not imply consent, but instead serves to minimize the degree of intrusiveness of the search. See id. at 128 n.7. In Commonwealth v. Roland R., supra, the juvenile's implied consent derived not from the prior notice itself but from his act of placing his bag on the table in the screening area and then passing through a metal detector.

purposes that justify it, that the decision to search is the result of the protocol rather than a discretionary determination to search, and "there is no significant danger of hindsight justification." Commonwealth v. Ford, supra at 425, quoting from South Dakota v. Opperman, 428 U.S. 364, 383 (1976) (Powell, J., concurring).

In the present case, the interest of facility officials in preventing weapons, drugs, or other contraband from becoming accessible to prisoners is apparent. Cf. Rasheed v. Commissioner of Correction, 446 Mass. 463, 473-474 (2006).[11] In addition, as we have observed, a sign posted at the entrance of the parking lot warns that all vehicles are subject to search. However, no written policy regulates the conduct of searches, and not all vehicles are searched. Indeed, the circumstances of the present case illustrate the discretionary nature of the decision to search: Officer Creed's decision to search the defendant's vehicle (and not, for example, the Volvo driven by the attorney) was triggered by a particularized suspicion, well

---

[11] The defendant suggests that no reasonable concern for the transfer of contraband to prisoners was present in the circumstances of this case, as the defendant and his companion had already left the vehicle and entered the bail lobby. However, as the Commonwealth observes, items could easily have been removed from the vehicle and secreted within the parking lot for later retrieval by a prisoner on work detail. Similar considerations have been held to justify a vehicle search in cases decided in other jurisdictions. See, e.g., State v. Daniels, 382 N.J. Super. 14, 17 (2005).

short of probable cause, that the prescription pill bottle might contain contraband. Although a subjective investigatory motive will not invalidate an otherwise permissible administrative search, see Commonwealth v. Eagleton, supra at 206-207, in the absence of a written policy or consistent procedures the presence of an expressly investigatory motive may suggest that the search was investigatory rather than administrative in nature. In any event, the absence of a written policy detracts from the requirement that an administrative search "meet standard, neutral guidelines, and be conducted pursuant to a plan devised in advance by law enforcement supervisory personnel." Commonwealth v. Bizarria, 31 Mass. App. Ct. 370, 378 (1991), quoting from Commonwealth v. Anderson, 406 Mass. 343, 347 (1989).

We acknowledge that there is no inherent right to visit a correctional facility, see G. L. c. 127, § 36; note 9, supra, so that visitors have a diminished expectation of privacy when they choose to visit.[12] However, we are not persuaded that the mere posting of a sign at the entrance to the facility so reduces a visitor's expectation of privacy that he may be subjected to a search of his vehicle at the discretion of correction officials,

---

[12] We note, however, that this defendant is not within the class of visitors described in the statute, in the sense that he traveled to the facility for the purpose of posting bail, and did not visit the facility itself or any inmate within it.

without any consistent policy or procedure to guide the decision regarding which vehicles to search.

This case is unlike those decided in other jurisdictions upholding administrative searches of vehicles in correctional facility parking lots.  In State v. Daniels, 382 N.J. Super. 14, 16 (2005), the search was conducted pursuant to a Department of Corrections policy instituted in 1999.  In Neumeyer v. Beard, 301 F. Supp. 2d 349, 349-350 (M.D. Pa. 2004), aff'd, 421 F.3d 210 (3d Cir. 2005), the search was conducted pursuant to a written Department of Corrections policy, and the plaintiff signed a written form consenting to the search of her vehicle. In Estes v. Rowland, 14 Cal. App. 4th 508, 517 (1993), not only was the search conducted pursuant to a written policy, but the policy was mailed to prospective visitors before their visit. In Romo v. Champion, 46 F.3d 1013, 1016 (10th Cir.), cert. denied, 516 U.S. 947 (1995), officials searched all vehicles passing through a roadblock on a road leading to a prison.  In People v. Turnbeaugh, 116 Ill. App. 3d 199, 202 (1983), the routine search of vehicles approaching the facility was the subject of internal regulations of the facility, pursuant to which the owner or driver of any such vehicle was advised that he must consent to a search of his vehicle or he would be refused access to the facility.  Finally, in State v. Putt, 955 S.W.2d 640, 642 (Tenn. Crim. App. 1997), a task force was

assigned to search all vehicles entering a prison facility, after the vehicles passed a sign warning they would be subject to search.

In sum, although correction officials have a legitimate interest in preventing the introduction of weapons, drugs, or other contraband onto facility grounds, in the absence of regulations or a written policy describing the parameters of an administrative search procedure (or, alternatively, a procedure in which every vehicle is searched as it enters the facility), the mere posting of a sign advising that vehicles entering the facility parking lot are subject to search was inadequate to justify the warrantless search, on a discretionary basis, of vehicles selected by officers patrolling the parking lot.  The defendant's motion to suppress was properly allowed.

<u>Order allowing motion to suppress affirmed</u>.