MIZRAHI, COMMONWEALTH vs., 100 Mass. App. Ct. 690

 
 COMMONWEALTH vs. NATHAN MIZRAHI.

100 Mass. App. Ct. 690
 December 1, 2021 - February 2, 2022

Court Below: Superior Court, Suffolk County
Present: Milkey, Blake, & Grant, JJ.

 

Firearms. Practice, Criminal, Motion to suppress, New trial, Assistance of counsel, Duplicative convictions. Constitutional Law, Search and seizure, Assistance of counsel. Search and Seizure, Administrative inspection, Inevitable discovery.

There was no merit to a criminal defendant's claim, in his motion for a new trial, that defense counsel had been ineffective in arguing a pretrial motion to suppress a firearm found by police during an administrative search of a tactical vest seized from the defendant when he sought to be admitted into an area set aside for attendees of a "free speech" rally in the Boston Common, where counsel's actual strategy in challenging the search, although ultimately unsuccessful, was reasonable when made; where the strategy suggested by the defendant, which was nothing more than a refinement of the arguments presented in his unsuccessful motion to suppress, would not have accomplished anything material for the defense; and where the police, prior to the rally, had provided ample constructive and actual notice of the search, and the policy resulting in the seizure was the most minimally intrusive way to ensure public safety while protecting the defendant's free speech rights; at any rate, the defendant had the option to avoid the search entirely but chose to proceed, and thus discovery of the firearm was inevitable, in light of the presence of metal detectors at the entrance to the rally. [694-699]

Where a criminal defendant was convicted of both unlawful of possession of a loaded firearm as well as unlawful possession of ammunition based only on the ammunition located inside the firearm, this court vacated the latter conviction as duplicative. [699]

INDICTMENTS found and returned in the Superior Court Department on September 25, 2017. 

 A pretrial motion to suppress evidence was heard by Diane C. Freniere, J.; the case was tried before Robert N. Tochka, J., and a motion for new trial was considered by Jackie A. Cowin, J. 

Kathryn Karczewska Ohren for the defendant.

Brooke Hartley, Assistant District Attorney, for the

Commonwealth.

 BLAKE, J. Approximately one week after a violent protest in Charlottesville, Virginia, resulted in the murder of a counter

 Page 691 

 protestor, and days after the New England Holocaust Memorial in Boston was vandalized, a "free speech" rally was scheduled to take place at the rotunda on Boston Common. [Note 1] The defendant, Nathan Mizrahi, traveled from New York to attend the rally. As the defendant approached the entrance to the rotunda, he was met by counter protestors who verbally attacked him and threw projectiles, including bottles full of liquid, at him. Before he could be admitted into the area set aside for rally attendees, Captain John Danilecki of the Boston Police Department (department) seized the tactical steel-plated body armor (vest) that the defendant wore. A loaded firearm was found in an inside front compartment of the vest. Because the defendant did not have a Massachusetts license to carry a firearm, he was arrested and charged with various firearm offenses.

 The defendant's attorney (suppression counsel) filed a motion to suppress all evidence seized from the defendant. After an evidentiary hearing, a judge of the Superior Court (suppression judge) denied the motion. Following a jury trial before a different judge, the defendant was convicted of possession of a loaded firearm without a license, possession of a firearm without a license, and possession of ammunition without a firearm identification (FID) card. The defendant, now represented by new counsel, filed a motion for a new trial that was assigned to a third judge (motion judge), the trial judge having retired. The motion was denied without a hearing.

 In this consolidated appeal from his convictions and the order denying his motion for a new trial, the defendant claims that suppression counsel was constitutionally ineffective for not pursuing a different strategy in the motion to suppress. He also contends, and the Commonwealth agrees, that the conviction of unlawful possession of ammunition is duplicative of the conviction of unlawful possession of a loaded firearm. As that conviction relates only to the ammunition that was located inside the firearm, we agree and vacate that conviction. We affirm the remaining convictions. 

 Background. 1. The hearing on the defendant's motion to suppress. a. Findings of fact. We recite the facts as found by the suppression judge, none of which the defendant challenges on 

 Page 692 

appeal. The city of Boston issued a permit for a free speech rally [Note 2] to be held on August 19, 2017, at the rotunda on Boston Common. The department was concerned for the safety of the rally attendees and the anticipated 40,000 counter protestors, particularly in the wake of the violence at the Charlottesville rally the week prior. In response, the department set up what they called a "buffer zone" area [Note 3] (permitted area) to separate the rally attendees in a secure area near the rotunda. Also, in advance of the rally, the department made multiple public statements to the news media and on social media to alert the public of security protocols that would be in place to ensure a safe and peaceful rally. As part of the media campaign, the department issued a community advisory two days prior to the rally. Among other things, the advisory notified the public that there would be a large presence of police officers in uniform and in plainclothes, and fixed and mobile video cameras. The advisory also alerted attendees not to bring large bags or backpacks, that these items may be subject to search, and that there was no storage available for personal items. The department also released a list of prohibited items that, as relevant here, included firearms, knives, weapons, sharp objects, shields, and other items that could be used as weapons.

 The rally was scheduled to begin at noon. To enter the permitted area, attendees were required to submit to a search and screening of their bags, to walk through metal detectors, and to be scanned with a handheld wand. There were two entrance points to the permitted area, each with a large police presence. Captain Danilecki arrived at Boston Common at 9 a.m. At that time, there were already approximately ten to fifteen thousand counter protesters, who significantly outnumbered the rally attendees. The counter protestors were taunting, shouting profanities, and throwing projectiles at the rally attendees.

 Danilecki's attention was drawn to two men in the crowd, one of whom was later identified as the defendant. The men, who were moving toward him, wore United States Army fatigues, steel-plated tactical body armor, and military helmets. Counter protestors tried to grab the two men and shouted profanities at

 Page 693 

 them. [Note 4] Danilecki believed that the men's attire was inciting the counter protestors and that, as a result, the two men were in danger. To ensure their safety, six officers separated the opposing parties and surrounded the two men. Counter protestors continued to taunt and throw projectiles. Danilecki asked the men whether they intended to go in to the permitted area. The defendant, who was calm and well behaved, said that they did. Danilecki advised the men that they could not do so while wearing the vests [Note 5] and helmets. The defendant did not want to remove his vest. Danilecki told him that he would confiscate the vest if the defendant wanted to go in to the permitted area. Ultimately Danilecki removed the defendant's helmet and the vest. Danilecki said the vest was very heavy, weighing between fifteen and twenty pounds, and had compartments that could conceal items. The defendant asked for a receipt; Danilecki was unable to provide one, but he advised the defendant, who refused to identify himself, that he could retrieve the items at the area A-1 police station (police station) after the rally. After a search of the defendant's backpack (which revealed no prohibited items), the men were escorted into the permitted area. 

 At Danilecki's request, an officer transported the vest to the police station for safekeeping. Pursuant to the department's rules and procedures for the safeguarding of personal property, an inventory search of the vest was conducted. A loaded firearm was located in an inside front compartment of the vest under a Velcro strap. After the rally, the defendant arrived at the police station to pick up his belongings. He provided identification and confirmed that the vest belonged to him. When asked whether he had a license to carry firearms, the defendant produced one from New York. He was not licensed in Massachusetts. 

 b. Rulings of law. The suppression judge made the following rulings of law, none of which the defendant challenges on appeal. The police purpose of ensuring a safe and peaceful free speech rally on Boston Common satisfied the threshold requirement for 

 Page 694 

a lawful administrative search. In analyzing the reasonableness of the search, the judge considered whether the department implemented measures to reduce the intrusiveness of the search without compromising the administrative goals of the search, and whether the defendant was given notice that he could decline to be searched. She found that the defendant had actual and constructive notice of the event's security requirements based on the significant public advisory campaign in advance of the rally; he made the choice to enter the permitted area with full knowledge that as a consequence of that decision he would have to turn over his tactical vest and helmet to the police; and he was aware the vest would be taken to a police station for safeguarding. She concluded that the defendant consented to the search. The defendant, through counsel, reaffirmed at oral argument before this court that he was not challenging the suppression judge's findings of fact and rulings of law.

 2. Motion for new trial. The defendant filed a motion for a new trial, contending that suppression counsel was ineffective where he did not argue that the seizure of the vest was unlawful because it was based on police determinations that the vest projected militaristic imagery and incited violence, and that its civilian use was illegitimate. In denying the motion without a hearing, the motion judge concluded that the vest was seized as part of a lawful administrative search. Citing Commonwealth v. Comita, 441 Mass. 86, 90-91 (2004), she concluded that the grounds raised by the defendant "would not have accomplished anything material for the defendant."

 Discussion. 1. Administrative search. Here, the suppression judge and the motion judge concluded that the police lawfully seized the defendant's vest as part of an administrative search. Administrative searches must be conducted "as part of a scheme that has as its purpose something 'other than the gathering of evidence for criminal prosecutions.'" Commonwealth v. Carkhuff, 441 Mass. 122, 126 (2004), quoting Commonwealth v. Harris, 383 Mass. 655, 657 (1981). As the motion judge found, that purpose was to ensure a safe and peaceful free speech rally on Boston Common. See Commonwealth v. Roland R., 448 Mass. 278, 281 (2007) ("area-entry inspections at court house entrances" permissible without warrant for safety and security purposes). Cf. Commonwealth v. Gray, 466 Mass. 1012, 1013 (2013) ("sobriety checkpoint must be conducted in strict compliance with the written guidelines applicable to that particular checkpoint"). 

 Page 695 

 "An administrative search must also be 'reasonable' in the sense that it 'must be as limited in its intrusiveness as is consistent with satisfaction of the administrative need that justifies it'" (citation omitted). Carkhuff, 441 Mass. at 127. In order to minimize the intrusiveness, there typically must be prior notice of the search. See id. at 127-128. Here, the police made multiple statements about the security protocols leading up to the rally, including on social media. There was signage at Boston Common, and Danilecki told the defendant that he could not enter the permitted area with the vest and helmet. [Note 6] This satisfied the reasonableness requirement set out in Carkhuff. [Note 7] It is against this backdrop that we consider the defendant's ineffective assistance of counsel claim.

 2. Ineffective assistance of counsel. The defendant claims that suppression counsel was ineffective because in arguing the motion to suppress, counsel should have raised issues about the police misconduct and alleged violations of the defendant's right to free speech under the First Amendment to the United States Constitution. He asserts that suppression counsel ignored the fact that Danilecki "conceded" that the seizure of the vest was the result of "viewpoint discrimination," and not public safety, and the department's security policies were "overbroad" and ripe for subjective abuse. He maintains that the real reason that Danilecki seized the vest was because counter protesters were "shrieking" at him to do so, and not because of the administrative search or public safety grounds to which Danilecki testified. 

 We review the denial of a motion for a new trial for a significant error of law or abuse of discretion. See Commonwealth v. Wilson, 486 Mass. 328, 334 (2020). To prevail on a claim of ineffective assistance of counsel, "the defendant must show that the behavior of counsel fell measurably below that of an ordinary, fallible lawyer and that such failing 'likely deprived the defendant of an otherwise available, substantial ground of defence.'" Commonwealth v. Prado, 94 Mass. App. Ct. 253, 255 (2018),

 Page 696 

quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). 

 At the suppression hearing, the defendant attacked the sufficiency of the advisories issued prior to the rally. Suppression counsel argued that there was no specific evidence of which publication methods were used by the department, and that there was no evidence that any of the information actually reached the defendant, who had traveled from New York to attend the rally. Moreover, suppression counsel argued that the removal of the vest from the defendant was not justified as an administrative search, because the defendant was some distance from the entrance to the permitted area. This, suppression counsel claimed, proved that Danilecki made a unilateral decision to remove the vest before the defendant subjected himself to the rally's search requirements. To support this claim, suppression counsel called two witnesses who testified that there were not many counter protestors in the vicinity before the police approached the defendant. Suppression counsel also applied for interlocutory review of the order denying the motion to suppress. [Note 8] Although suppression counsel's strategy in challenging the search was ultimately unsuccessful, it was reasonable when made. See Commonwealth v. Gomes, 478 Mass. 1025, 1026 (2018) (strategic choices reviewed with some deference to avoid characterization of defense as unreasonable when merely unsuccessful). [Note 9]

 The defendant's argument also fails under the second prong of the Saferian test. The motion judge found that the strategy the defendant contends should have been employed would not have accomplished something material for him. See Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006). We agree. At bottom, the defendant's claims on appeal are a repackaging of the arguments made by suppression counsel. More specifically, as to the defendant's claim of "viewpoint discrimination," suppression counsel argued that the police "went in" due to the defendant's "military gear," and that the defendant was not given a real choice whether 

 Page 697 

to remove his vest and enter the permitted area or to refuse to do so. Suppression counsel argued that the police simply seized the vest, rendering the search unconstitutional. Further, contrary to the defendant's contention, and as the motion judge observed, Danilecki did not concede that his actions, and those of the department, were for a reason other than public safety. He testified that the department had serious public safety concerns well before the rally began, which included that a counter protestor at a similar rally was recently murdered in Charlottesville. He also explained that tens of thousands of counter protestors showed up three hours in advance of the rally, and that a group of these individuals singled out the defendant and his companion, who were wearing "militaristic" attire. Danilecki was concerned for the pair's safety, and in order to protect them, the defendant and his companion were escorted into the permitted area. It was at this point that the administrative search was conducted. In addition, suppression counsel also argued that the security policy -- by its own terms -- did not authorize the police to seize the vest. However, the suppression judge found that the vest was "akin to any large multi-compartment item" identified in the police advisory. Notably, she found that the vest "could easily be used as a weapon," a finding not challenged on appeal. [Note 10]

 A defendant alleging the ineffective assistance of counsel must establish that the Commonwealth would not have met its burden to prove that the warrantless search and seizure was constitutional. See Comita, 441 Mass. at 93-94. See also Commonwealth v. McWilliams, 473 Mass. 606, 615, 619 (2016) (motion to suppress statements and identification would not have succeeded). This the defendant failed to do. [Note 11] Suppression counsel was not ineffective for failing to pursue a motion on what the defendant categorized as "correct grounds." Indeed the defendant's preferred arguments would not have been successful, as they are nothing more than a refinement of the arguments that he

 Page 698 

 made in connection with the motion to suppress. [Note 12] See Comita, supra at 91 (counsel cannot be ineffective for not pursuing futile motion). 

 The defendant next claims that suppression counsel would have been successful had he argued that the search was excessive and subject to abuse, and therefore was unreasonable. We are not persuaded. The department provided ample constructive and actual notice to the defendant before he surrendered his vest to gain access to the permitted area. As the media advisories indicated, there was a large police presence at the rally, and conspicuous signs warned that attendees were subject to search if they wanted to enter the permitted area. Moreover, there were steel barricades, handheld wand scanners, and metal detectors at the only two entry points to the permitted area. As the motion judge found, the department policy that resulted in seizure of the vest was the most minimally intrusive way to ensure public safety while protecting the defendant's rights under the First Amendment to the United States Constitution. See Carkhuff, 441 Mass. at 127-128 (prior notice minimizes intrusiveness of search). 

 Indeed, the defendant had the option to avoid the search entirely by not entering the permitted area; he chose otherwise. [Note 13] Moreover, the metal detectors at the entrance to the rally would have detected the firearm. Therefore, it was inevitable that the firearm would have been discovered. See Commonwealth v. Campbell, 475 Mass. 611, 622 (2016) (suppression not required where Commonwealth can demonstrate that discovery of evidence by lawful means was certain and police did not act in bad faith to accelerate discovery). As was the case here, the inevitability of the discovery was "certain as a practical matter" (citation omitted), Commonwealth v. Hernandez, 473 Mass. 379, 387

 Page 699 

 (2015), that is, discovery of the firearm was "virtually certain." Commonwealth v. Perrot, 407 Mass. 539, 547 (1990). This doctrine serves as an independent ground for affirming the denial of the motion for a new trial and the firearm convictions. See Commonwealth v. Pridgett, 481 Mass. 437, 438 n.2 (2019) (appellate court is free to affirm so long as grounds for affirmance are supported by record and findings).

 3. Possession of ammunition. The defendant argues -- and the Commonwealth concedes -- that the conviction of unlawful possession of ammunition is duplicative of the conviction of unlawful possession of a loaded firearm. This is the only claim that the defendant raises with respect to his direct appeal. Because the defendant was convicted of possessing only the ammunition that was located inside the firearm, we agree and that conviction must be vacated. See Commonwealth v. Johnson, 461 Mass. 44, 51-54 (2011).

 Conclusion. On the indictment charging possession of ammunition without an FID card, the judgment is vacated, the verdict is set aside, and that indictment is to be dismissed. The remaining judgments are affirmed. The order denying the motion for a new trial is affirmed.

So ordered. 

FOOTNOTES
[Note 1] The rotunda is also known as the Parkman Bandstand. 

[Note 2] The free speech rally attendees were known to the department to be a "pro-Second Amendment" group. 

[Note 3] This area included a "corral area" for the press. It also had a fifty-foot "buffer zone" with metal barriers to separate the rally attendees from the counter protesters. 

[Note 4] The suppression judge credited the testimony of Danilecki. She did not credit "much of the testimony" of the two witnesses called by the defendant, who testified that "there were not many counter protesters in their vicinity immediately before the police approached" the defendant. She also viewed a video recording that she found to be consistent with Danilecki's testimony. 

[Note 5] As described infra, the suppression judge found that the vest was "akin to any large multi-compartment item" identified in the police advisory, and that it "could easily be used as a weapon." The defendant does not challenge these findings on appeal. 

[Note 6] Among other things, the signs posted throughout Boston Common stated that "firearms are not permitted." 

[Note 7] The defendant's reliance on Commonwealth v. Garcia-German, 90 Mass. App. Ct. 753 (2016), is misplaced. There, we recognized that a house of correction (HOC) has an interest in preventing contraband from being accessible to inmates, but we concluded that the search of a vehicle in the HOC parking lot was not a valid administrative search, as the HOC had no written policy that regulated the search, and the decision to search was discretionary. Id. at 758-760. 

[Note 8] The petition for interlocutory review was denied. 

[Note 9] The defendant contends that suppression counsel had no strategic reason for failing to take the approach that the defendant now claims would have been successful. He bases that contention on suppression counsel's affidavit filed in support of the defendant's motion for a new trial, in which suppression counsel stated, "As far as I can remember, there was no strategic reason for omitting additional arguments for suppression." In finding that suppression counsel met the standard of an ordinary, fallible lawyer, the motion judge was not bound by suppression counsel's affidavit disavowing that he had any such strategy. See Commonwealth v. Hudson, 446 Mass. 709, 714 (2006). 

[Note 10] The suppression judge observed that a steel-plated vest weighing between fifteen to twenty pounds could be used as a weapon or as a shield. She also concluded that the vest could be considered comparable to a large bag that was subject to search under the explicit terms of the policy advisory. 

[Note 11] The motion judge was not required to conduct an evidentiary hearing. This is particularly true where the defendant does not challenge the findings of the suppression judge, which support the conclusion that the motion for a new trial did not raise a substantial issue requiring a hearing. 

[Note 12] Questioned on cross-examination about whether he found any contraband on the defendant, Danilecki replied that he considered the vest contraband because it conveyed a "militaristic" image that was "inciting" the counter protestors. The defendant seizes on that comment and argues that counsel was ineffective for not having argued that this was an improper reason for Danilecki to seize the vest. Read in context, Danilecki's comment did not undermine his detailed testimony about the administrative search protocols, based on which the suppression judge found that seizure of the vest was justified. Indeed, Danilecki's concerns for public safety support the appropriateness of the administrative search protocols that the department established to allow for a safe and peaceful rally. 

[Note 13] Danilecki told the defendant that he had two options. He could give up the vest and subject himself to search, or he could leave the rally without entering the permitted area. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.