APPEALS COURT 
 
 COMMONWEALTH vs. JAMES ANDREWS

 
 Docket:
 24-P-430
 
 
 Dates:
 February 4, 2025 – June 16, 2025
 
 
 Present:
 Ditkoff, Hand, & Walsh, JJ.
 
 
 County:
 Bristol
 

 
 Keywords:
 Homicide. Assault and Battery by Means of a Dangerous Weapon. Self-Defense. Jury and Jurors. Evidence, Self-defense, Verbal completeness, Hearsay, Photograph. Practice, Criminal, Instructions to jury, Jury and jurors, Examination of jurors, Challenge to jurors, Assistance of counsel, Argument by prosecutor, Verdict, Postconviction relief.
 
 

             Indictments found and returned in the Superior Court Department on August 27, 2018. 
            The cases were tried before Brian S. Glenny, J., and a motion to reduce the verdict, filed on September 8, 2023, was heard by him. 
            Neil L. Fishman for the defendant.
            Robert P. Kidd, Assistant District Attorney, for the Commonwealth.
            HAND, J.  On August 9, 2018, defendant James Andrews fatally stabbed the victim, Allan Monteiro, in the apartment in which the two were living.  After a jury trial in the Superior Court, the defendant was convicted of murder in the second degree and assault and battery by means of a dangerous weapon (ABDW).  Here, we consider the defendant's consolidated appeal from these convictions, and from the trial judge's subsequent denials of the defendant's motions to vacate the ABDW conviction and reduce the verdict of murder in the second degree to voluntary manslaughter.
            As we will explain, we are not persuaded that the victim made an unlawful entry into the defendant's dwelling, and so we discern no abuse of discretion or other error in the judge's failure to instruct the jury on the "castle law," G. L. c. 278, § 8A.  Additionally, where the evidence was sufficient to prove that (1) the defendant's reaction to the victim's destruction of the defendant's computer was not reasonable under the circumstances, (2) the victim did not make physical contact with the defendant's body, and (3) the defendant failed to satisfy his duty to retreat from the conflict, we conclude that the Commonwealth met its burden of proving that the defendant was guilty of murder in the second degree.  Furthermore, trial counsel was not ineffective in failing to challenge a juror who credibly affirmed his impartiality during jury selection.  We are also satisfied that any claimed misstep in the evidentiary rulings the defendant challenges on appeal did not result in prejudicial error, and that any error in the prosecutor's closing argument did not create a substantial risk of a miscarriage of justice.  Accordingly, we affirm the convictions; likewise, we affirm the orders denying the defendant's motions to vacate the ABDW conviction and reduce the verdict.
            Facts.  The trial evidence was largely undisputed.[1]  We summarize it here, reserving some details for later discussion.
            In the late summer of 2018, the defendant and the victim were living on the same floor of a two-floor apartment.  They did so with the permission of the tenant, who was both the victim's sister and the defendant's cousin.[2]  The defendant occupied a stairway landing that was separated from the rest of the apartment's common hallway by a sheet used as a curtain, and the victim occupied a room off the hallway.  The victim's daughter and one year old granddaughter lived in a room situated between the victim's room and the landing where the defendant was living; the daughter's room shared a wall with the victim's room.
            In the early morning hours of August 9, 2018, the defendant was using his laptop computer to watch pornography and listen to loud music in his living area on the stair landing.  The music woke the victim's daughter and granddaughter, who was ill.  The victim's daughter asked the defendant to turn the music down, but the defendant did not respond.  The victim then walked out of his room, past his daughter's room, and toward the defendant.  When the defendant failed to turn the music down in response to the victim's repeated requests, the victim ripped down the curtain defining the defendant's living area and used a metal object to smash the defendant's laptop computer.[3]
            The victim's daughter heard the victim walk away from the defendant's living area past her room toward his own room, and then saw the defendant "sho[o]t up [to a standing position] really fast."  She also heard the victim say, "[Y]ou don't want none of this" and tell the defendant to calm down.  Shortly afterward, another occupant of the house came into the hallway and saw the victim on the ground about four or five feet away from the defendant's living area, wheezing and trying to get up.  The defendant was also in the hall, holding a knife in his hand.
            The defendant then ran down the stairs and out of the house.  He arrived at a friend's home at 5:40 A.M., wearing bloody sweatpants.  The friend testified that the defendant had no visible injuries.  Meanwhile, the victim had died as a result of multiple stab wounds.
            At 8:16 A.M., the defendant posted a message on his Facebook account (Facebook post).  The message read,
"With a heavy heart I say goodbye to all.  The ultimate mistake was made today and no words will make it better or change what was done.  I ask for only understanding and peace to all involved.  I truly tried to be the best me and I failed myself and family, and all again goodbye all and love each other."
The defendant was arrested that afternoon.  Although the police conducted an extensive search for the knife they believed was used in the murder, they did not find it.
            Procedural background.  The defendant was indicted in August 2018 for murder in the first degree and ABDW.  At the close of the Commonwealth's evidence, the defendant moved for a required finding of not guilty and, after that motion was denied, rested without introducing additional evidence.[4]  The judge's homicide instructions addressed the elements of murder in the first degree on a theory of extreme atrocity and cruelty; murder in the second degree; and voluntary manslaughter based on mitigating circumstances of heat of passion, unreasonable provocation, and sudden combat.  The judge also instructed the jury on self-defense, but denied the defendant's request for an instruction under the castle law, G. L. c. 278, § 8A.
            The jury ultimately convicted the defendant of murder in the second degree and ABDW.  Before sentencing, the defendant orally moved to vacate the ABDW conviction, arguing that it was duplicative of the murder conviction.  The judge denied that motion.  After the defendant filed a direct appeal from his convictions, he was granted leave to file a motion to reduce the verdict.  He did so and, when the judge denied that motion, he appealed from that ruling, as well.
            Discussion.  1.  Castle law instruction.  General Laws c. 278, § 8A, the "castle law," relieves a defendant from the usual duty to retreat where the defendant is responding "to an assault threatening death or great bodily harm by someone unlawfully in the [defendant's] home."[5]  Commonwealth v. Peloquin, 437 Mass. 204, 208 (2002).  In the present case, the defendant challenges the judge's denial of his request for a jury instruction on this exception.  We recognize that the bar here is low.  See Commonwealth v. Pike, 428 Mass. 393, 395 (1998) ("A defendant is entitled to a self-defense instruction if any view of the evidence would support a reasonable doubt as to whether the prerequisites of self-defense were present").  Even viewing the trial evidence in the light most favorable to the defendant, see Commonwealth v. Peterson, 53 Mass. App. Ct. 388, 389 (2001), and resolving all reasonable inferences in his favor, however, see Pike, supra, we discern no error in the judge's ruling.
            The evidence did not permit a finding that the victim was "unlawfully in [the defendant's] dwelling" at any time during the encounter.  G. L. c. 278, § 8A.  The victim, like the defendant, was living in the apartment with the tenant's permission,[6] and invited guests are "lawfully on the premises" for purposes of the castle law.  Peloquin, 437 Mass. at 208.  That the victim had not been invited into the defendant's living space on the stairway landing does not change our view; the "dwelling" in question was the apartment, not the portion of the common area that the tenant permitted the defendant to use as a living space.  Cf. Commonwealth v. Fortini, 44 Mass. App. Ct. 562, 568 (1998), quoting Commonwealth v. Albert, 391 Mass. 853, 862 (1984) (for purposes of castle law, "a tenant's dwelling cannot reasonably be said to extend beyond his own apartment and perhaps separate areas subject to his exclusive control").  Because "[n]othing in G. L. c. 278, § 8A, . . . eliminates the duty on the part of [an] occupant of the dwelling to retreat from a confrontation with a person who is lawfully on the premises" (emphasis added), Peloquin, supra, the castle law did not apply here, and the defendant was not entitled to a jury instruction excusing him from his duty to retreat before acting in lethal self-defense.  Commonwealth v. Lapointe, 402 Mass. 321, 329 (1988).
            2.  Sufficiency of the evidence.  In assessing the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth.  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  Applying that standard here, we are not persuaded by the defendant's challenge to the Commonwealth's evidence disproving (1) that the defendant killed the victim in self-defense, or (2) that there were mitigating circumstances warranting a conviction of voluntary manslaughter.
            a.  Self-defense.  "Self-defense, 'if warranted by the circumstances and carried out properly, constitute[s] a complete defense and not merely a mitigating circumstance.'"  Commonwealth v. Ng, 489 Mass. 242, 252 n.6 (2022), S.C., 491 Mass. 247 (2023), quoting Commonwealth v. Carlino, 429 Mass. 692, 694 (1999), S.C., 449 Mass. 71 (2007).  "Once self-defense is put in issue, the Commonwealth must prove that the defendant did not act in self-defense."  Commonwealth v. Kamishlian, 21 Mass. App. Ct. 931, 932 (1985).  Where the defendant used deadly force,
"the Commonwealth [must] prove at least one of the following beyond a reasonable doubt:  '(1) the defendant did not actually believe that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; (2) a reasonable person in the defendant's position would not reasonably have believed that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; (3) the defendant did not use or attempt to use all proper and reasonable means in the circumstances to avoid physical combat before resorting to the use of deadly force; or (4) the defendant used more force than was reasonably necessary in all the circumstances.'"
Commonwealth v. Roman, 495 Mass. 412, 431 (2025), quoting Commonwealth v. Grassie, 476 Mass. 202, 210 (2017), S.C., 482 Mass. 1017 (2019).
            In this case, in the light most favorable to the Commonwealth, see Latimore, 378 Mass. at 676-677, the evidence established that, after the victim tore down the defendant's makeshift privacy screen and damaged his laptop computer, the victim walked away and withdrew from any further conflict.  As he did so, however, the defendant armed himself and pursued the victim.  Although the victim tried to deescalate the situation, the defendant repeatedly stabbed and cut the victim, who was then unarmed,[7] at least eight times with great force.  This evidence was sufficient to support a finding that the defendant lacked a reasonable belief that he was in imminent danger, failed to avoid the confrontation, and used more force than was necessary, thus satisfying the Commonwealth's burden to disprove each of the possible grounds that might have justified the use of deadly force in self-defense.[8]  See Roman, 495 Mass. at 431 (obligation to use all reasonable means to avoid physical combat before resorting to deadly force); Pike, 428 Mass. at 396-397 (self-defense requires defendant to believe victim presents risk of serious injury or death, and requires that apprehension be reasonable).
            b.  Mitigating circumstances.  "Voluntary manslaughter is an unlawful killing arising not from malice, but from . . . sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense" (quotation and citation omitted).  Commonwealth v. Acevedo, 446 Mass. 435, 443 (2006).  Contrary to the defendant's assertion here, the evidence at trial was sufficient to disprove the existence of each of the three mitigating circumstances that could have negated malice and warranted a conviction of voluntary manslaughter, rather than murder in the second degree.[9]
            "Reasonable provocation is provocation that 'would have been likely to produce in an ordinary person such a state of passion, anger, fear, fright, or nervous excitement as would eclipse his capacity for reflection or restraint.'"  Acevedo, 446 Mass. at 443, quoting Commonwealth v. Walden, 380 Mass. 724, 728 (1980).  Here, viewed in the light most favorable to the Commonwealth, the evidence demonstrated that the victim tore down the curtain screening the defendant's living area, damaged the defendant's laptop computer,[10] and then walked away.  Absent any evidence of a threat of harm to the defendant himself, the jury readily could have determined that an "ordinary person" would not have lost "his capacity for reflection or restraint" in these circumstances (although they were not required to do so) (citation omitted).[11]  Acevedo, supra.
            Likewise, the evidence was sufficient for a jury to find an absence of mitigation based on "sudden combat."  "Consistent with more than one and one-half centuries of our jurisprudence, sudden combat entails two persons meet[ing], not intending to quarrel, and angry words suddenly arise, leading to blows . . . on both sides, without much regard to who is the assailant" (quotation and citation omitted).  Commonwealth v. Miranda, 492 Mass. 301, 307 (2023).  "The victim making physical contact with the defendant is necessary" to establish mutual combat.  Id.  See Commonwealth v. Lugo, 482 Mass. 94, 104-105 (2019) (where claimed provocation is sudden combat, "the victim generally must attack the defendant, or at least strike a blow against the defendant in order to warrant a manslaughter instruction").  In this case, however, the jury could have reasonably found that the victim did not make physical contact with the defendant prior to the stabbing.
            Finally, where the jury could have found that the defendant lacked a reasonable belief that he was in danger at the time of the stabbing, and the jury could have found that the defendant failed to retreat, it follows that his claim that he did not use excessive force in self-defense also fails.  See Commonwealth v. Espada, 450 Mass. 687, 695 (2008) ("Because the defendant is not entitled to a self-defense instruction, . . . an instruction on manslaughter by excessive force in self-defense is not available").  Cf. Commonwealth v. Silva, 455 Mass. 503, 525-526 (2009) (in deadly force case, defendant is entitled to verdict of voluntary manslaughter, not murder, "if the Commonwealth fails to disprove all the elements of self-defense except the element of reasonableness of the force used").
            3.  Juror bias.  The defendant challenges the propriety of the judge's decision to seat a prospective juror (juror no. 4) on the jury.  Relatedly, the defendant argues that his trial counsel provided ineffective assistance when he failed to challenge juror no. 4.  We discern no error on the judge's part and conclude that counsel was not ineffective.
            During individual voir dire of the prospective jurors, the judge and counsel asked juror no. 4 a series of questions.  Juror no. 4 confirmed, inter alia, his ability to "be fair to both sides," his understanding and ability to apply the presumption of innocence, and his ability and willingness to follow the judge's instructions on the law.  Although juror no. 4 initially expressed a preference that defendants testify at trial, and a general belief that a person charged with a crime "must have done something," his responses to follow up questions by the judge and defense counsel elicited his unequivocal denial that he would penalize a defendant for choosing not to testify, and his equally emphatic confirmation of his ability to put aside any "initial feeling" about the significance of a defendant's having been charged with a crime.[12]  At the conclusion of the voir dire, the judge made a finding on the record that juror no. 4 was indifferent and seated him on the jury.  Defense counsel did not object to the judge's determination and did not challenge juror no. 4.
            The defendant does not suggest that juror no. 4 had a bias against him, personally; instead, the defendant argues that juror no. 4's answers to the questions noted above suggest that he "clearly [did] not understand the presumption of innocence or [was] too hostile to it to sit on [a criminal] case."  We do not agree with these characterizations.
            Whatever juror no. 4's "initial impressions" outside his jury service might have been, when asked whether he could put them aside and apply the law as instructed, the transcript reflects that he was unequivocal about his ability to do so.[13]  Where, as here, "[the] juror was forthright, and the record establishes that the judge expressly questioned him about [his views], observed his demeanor, and heard the tone as well as the content of his responses[,] . . . we defer to the 'trial judge's determination of impartiality.'"  Commonwealth v. Jaime J., 56 Mass. App. Ct. 268, 272-273 (2002), quoting Commonwealth v. Ferguson, 425 Mass. 349, 352–353 (1997).  Cf. Commonwealth v. Leahy, 445 Mass. 481, 499 (2005) (judge may accept juror's representation of impartiality absent "solid evidence of a distinct bias").  We therefore discern no abuse of discretion or other error in the judge's decision to seat juror no. 4 on the jury.  See Commonwealth v. Rios, 96 Mass. App. Ct. 463, 471 n.10 (2019) (collecting cases).
            For related reasons, defense counsel's representation did not fall below accepted standards when he failed to challenge juror no. 4.  Because the judge had determined that juror no. 4 was indifferent, a for-cause challenge to juror no. 4 would likely have failed.  Trial counsel "[i]s not ineffective for failing to make an objection that would have been futile under the prevailing case law" (citation omitted).  Commonwealth v. Alcide, 472 Mass. 150, 165 (2015).  See Commonwealth v. Aspen, 85 Mass. App. Ct. 278, 280 (2014) ("A strategic or tactical decision by counsel will not be considered ineffective assistance unless that decision was manifestly unreasonable when made" [quotation and citation omitted]).  The judge in this case determined that juror no. 4 was impartial, and the defendant points to no other reason to challenge juror no. 4.  Accordingly, the defendant has not demonstrated that his counsel was ineffective for failing to do so.  See Commonwealth v. Mello, 420 Mass. 375, 396-397 (1995) (defense counsel not ineffective for failing to challenge jurors with connections to law enforcement where judge implicitly credited jurors' expressions of their beliefs that they could be fair and impartial through trial).
            4.  Evidentiary rulings.  a.  Defendant's self-serving statements.  Prior to trial, the Commonwealth moved in limine to introduce evidence of the defendant's Facebook post.[14]  The defendant responded with a motion to admit evidence of approximately six other statements that he made to his brother, friends, cousin, and acquaintances on the day of the murder and before his arrest, arguing that, if the Commonwealth was permitted to introduce the Facebook post, evidence of his other statements was admissible under the doctrine of verbal completeness.  The judge ultimately ruled in favor of the Commonwealth on the parties' motions.
            On appeal, the defendant presses both his earlier verbal completeness argument and a new, alternative position that, even if the doctrine of verbal completeness did not apply, the judge's exclusion of the defendant's additional statements amounted to a "mechanistic" application of the hearsay rule that "defeat[ed] the ends of justice."  Our review of the judge's ruling is for an abuse of discretion.  See Commonwealth v. Ng, 491 Mass. 247, 260 (2023) (hearsay); Commonwealth v. Crayton, 470 Mass. 228, 247-248 (2014) (doctrine of verbal completeness).
            "The doctrine of verbal completeness allows admission of other relevant portions of the same statement or writing which serve to clarify the context of the admitted portion. . . .  The rule prevents a party from presenting a fragmented and misleading version of events" (quotation and citation omitted).  Commonwealth v. Clark, 432 Mass. 1, 14 (2000).  "The rule applies when the defendant's statement is (1) on the same subject as the admitted statement; (2) part of the same conversation as the admitted statement; and (3) necessary to the understanding of the admitted statement" (emphasis omitted).  Id.
            In this case, the statements the defendant sought to introduce satisfied the first of these criteria, but they were neither "part of the same conversation as the admitted statement," nor "necessary to the understanding of [that] statement" (emphasis omitted).  Clark, 432 Mass. at 14.  Contrast Crayton, 470 Mass. at 247 (doctrine of verbal completeness rendered admissible defendant's denial that he was using library computers to view child pornography, because denial addressed same subject as defendant's admissions to being in library and using computer, was part of same conversation, and provided necessary context for admitted statements).  The judge was therefore well within his discretion in admitting only the defendant's Facebook post, despite the defendant's reliance on the doctrine of verbal completeness.  See generally Clark, supra at 14-15 (where defendant told one officer that he had been alone at time of fatal shooting, but later told other officers that he had picked up hitchhikers that night, later statements not admissible under doctrine of verbal completeness because they were neither part of earlier conversation nor necessary to provide context for earlier statement).
            We are likewise unpersuaded by the defendant's reliance on Chambers v. Mississippi, 410 U.S. 284, 302 (1973), and Commonwealth v. Drayton, 473 Mass. 23, 36-37 (2015), S.C., 479 Mass. 479 (2018), for the proposition that, even if the doctrine of verbal completeness did not apply, the defendant's statements should have been admissible.  In Drayton, the Supreme Judicial Court applied Chambers to create a "narrow, constitutionally based exception to the hearsay rule . . . where otherwise inadmissible hearsay is critical to the defense and bears persuasive guarantees of trustworthiness."  Commonwealth v. Steeves, 490 Mass. 270, 282 (2022), quoting Drayton, supra at 25.  The exception "operat[es] only in the rarest of cases, to avoid injustice where constitutional rights directly affecting the ascertainment of guilt are implicated, and exclusion of evidence significantly undermine[s] fundamental elements of [a] defendant's defense" (quotation and citation omitted).  Steeves, supra.
            Here, the defendant does not explain how the excluded statements impacted a constitutional right "directly affecting the ascertainment of guilt" (citation omitted).  Steeves, 490 Mass. at 282.  Although he argues that the excluded statements were admissible to rebut "the consciousness of guilt evidence,"[15] if this is the constitutional issue in question, the defendant has still failed to show how the omission of these statements "significantly undermine[d]" any "fundamental elements of [his] defense" (citation omitted).  Id.  Nor has he shown that the portions of the excluded statements on which he relies -- his assertions that he acted in self-defense -- bore any of the "persuasive guarantees of trustworthiness" identified in Drayton, 473 Mass. at 25, 37-38, and its progeny.[16]  Because we conclude that the defendant has presented no more than "a common circumstance where a defendant makes potentially favorable hearsay statements . . . that would benefit the defense if offered without the risk of cross-examination," Steeves, supra at 283, the reasoning set out in Chambers and Drayton does not apply here.  The judge thus acted within his discretion by excluding the statements the defendant sought to introduce.
            b.  Photograph of the weapon.  At trial, the Commonwealth introduced evidence showing that the victim's wounds were caused by a large blade.  The Commonwealth also introduced evidence that, a week before the murder, the defendant had a "machete" with him when he visited a friend at her apartment.  Through the friend, the Commonwealth introduced a photograph of an exemplar knife of a similar size as the machete, though the Commonwealth did not suggest that the exemplar was the knife used in the killing.[17]  The defendant objected to this evidence, so to the extent the judge exceeded his discretion in admitting it, see Commonwealth v. Tassinari, 466 Mass. 340, 349 (2013), our review is for prejudicial error.  See Commonwealth v. Nardi, 452 Mass. 379, 396 (2008).
            We assume, arguendo, that the evidence of the exemplar knife was inadmissible because "there was no evidence that [the exemplar knife] could have been used in the commission of the crimes," and the evidence thus "had no probative value."  Commonwealth v. Hall, 485 Mass. 145, 162 (2020), quoting Commonwealth v. Veiovis, 477 Mass. 472, 486 (2017).  See Commonwealth v. Imbert, 479 Mass. 575, 585 (2018) ("Where a weapon definitively could not have been used in the commission of the crime [charged], we have generally cautioned against admission of evidence related to it" [citation omitted]).  But see Commonwealth v. Housewright, 470 Mass. 665, 678-679 (2015) ("Where . . . original items of physical evidence cannot be produced, substitutes similar to the originals have often been received as exhibits, in criminal as well as civil trials, to illustrate and corroborate testimony in which the originals figured:  the admission of such [exemplars] is well understood to rest in the discretion of the court" [citation omitted]); Commonwealth v. Ellis, 373 Mass. 1, 7 (1977) (no abuse of discretion in admission of "a gun, similar but not identical, to the alleged murder weapon," where prosecutor made clear to jury that gun in evidence "was merely illustrative").  Even so, where the jury heard ample evidence about "the injuries inflicted, the weapons consistent with those injuries, and the weapon[]" the defendant had in his possession shortly before the murder, we discern no prejudice stemming from the admission of the photograph, Hall, supra, and therefore no reason to vacate the defendant's convictions on this ground.
            5.  Prosecutor's closing argument.  The defendant next argues that the prosecutor overstepped the boundaries of permissible argument in several ways.  "In analyzing a defendant's claim of improper argument, . . . we analyze the remarks 'in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial.'"  Commonwealth v. McDonagh, 480 Mass. 131, 142 (2018), quoting Commonwealth v. Gaynor, 443 Mass. 245, 273 (2005).  Because the defendant did not preserve his objections to the prosecutor's summation in the trial court, to the extent we discern error in that argument, our review is for a substantial risk of a miscarriage of justice.  See Commonwealth v. Loguidice, 420 Mass. 453, 455-456 (1995).
            First, we do not agree that the prosecutor's use of evocative language in closing[18] amounted to an improper appeal to the jurors' emotions.  A prosecutor may argue "forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence" (citation omitted).  Roman, 495 Mass. at 422.  "Accordingly, where a prosecutor's language is based in fact and tracks the odious . . . nature of the crime[] committed, emotive language in a prosecutor's closing argument is permissible as merely enthusiastic rhetoric, strong advocacy, and excusable hyperbole" (quotation and citation omitted).  Commonwealth v. Grier, 490 Mass. 455, 472 (2022).  See Commonwealth v. Phillips, 495 Mass. 491, 499-500 (2025).
            We are likewise unpersuaded by the defendant's contention that the prosecutor argued facts not in evidence when he described the defendant as having "a machete in one hand, [and] a box cutter in the other," and as being "armed with a machete and a razor knife" immediately before the murder.  The medical examiner testified that at least some of the victim's wounds were inflicted by a large, sharp, sturdy blade, and the jury heard that the defendant had brought a "machete" with a long, wide blade to a friend's home approximately a week before the murder.  Furthermore, a box cutter with the victim's blood on its blade was found at the scene of the crime.  The argument on this point was thus properly limited to fair inferences from the evidence.  See Roman, 495 Mass. at 422.
            6.  Defendant's postverdict "motion to vacate."  There was no error in the judge's implicit denial of the defendant's oral motion to treat his conviction of ABDW as merged into the conviction of murder in the second degree.[19]  In reviewing the defendant's challenge to this ruling, we adhere to "[an] elements-based approach . . . for determining whether multiple convictions stemming from one criminal transaction are duplicative" (citation omitted).  Commonwealth v. Tran, 471 Mass. 179, 188 (2015).  "As long as each offense requires proof of an additional element that the other does not, neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not [duplicative]."  Id., quoting Commonwealth v. Vick, 454 Mass. 418, 431 (2009).
            "The elements of murder in the second degree are (1) an unlawful killing and (2) malice."  Commonwealth v. Earle, 458 Mass. 341, 346 (2010).  See G. L. c. 265, § 1.  ABDW, in contrast, requires proof that (1) a defendant "intentionally touched the victim, however slightly"; (2) "the touching was unjustified"; (3) "the touching was done with an inherently dangerous weapon or an object used in a dangerous fashion"; and (4) "the touching caused serious bodily injury."  Vick, 454 Mass. at 432.  See G. L. c. 265, § 15A.  Because each offense requires proof of at least one element that the other does not -- killing for murder and the touching with a dangerous weapon for ABDW -- ABDW is not a lesser included offense of murder in the second degree.[20]  See Tran, 471 Mass. at 188-189.
            7.  Motion to reduce the verdict.  After this appeal was filed, the defendant was granted leave to file a motion to reduce the jury's verdict.  See Mass. R. Crim. P. 25 (b) (2), as amended, 420 Mass. 1502 (1995).  He did so, arguing that a reduction in his conviction from murder in the second degree to voluntary manslaughter was justified because the lesser verdict was "more 'consonant with justice.'"  Commonwealth v. Pfeiffer, 492 Mass. 440, 446 (2023), quoting Commonwealth v. Rolon, 438 Mass. 808, 820 (2003).  In a thoughtful memorandum of decision, the judge denied this motion.[21]  Our review is for an abuse of the judge's discretion or other error of law.  See Commonwealth v. Gomez, 495 Mass. 688, 702 (2025).
            The judge did not err.  Rule 25 (b) (2) "empowers a judge to reduce a verdict to a lesser included charge, 'despite the presence of sufficient evidence to support the jury's verdict.'"  Pfeiffer, 492 Mass. at 445, quoting Commonwealth v. Pagan, 471 Mass. 537, 542, cert. denied, 577 U.S. 1013 (2015).  Furthermore, in ruling on a motion under rule 25 (b) (2), "[a] judge is not limited to viewing the evidence in the light most favorable to the Commonwealth; instead, the judge may consider the over-all weight of the evidence, including the defendant's version of the facts."  Gomez, 495 Mass. at 703.  As the trial judge in this case recognized, "[b]ecause rule 25 (b) (2) vests in a judge the power to undo the work of the jury, this postconviction authority 'should be exercised only sparingly.'"  Pfeiffer, supra at 446, quoting Grassie, 482 Mass. at 1018.
            The judge's rejection of the defendant's argument for reasonable provocation here turned on the judge's determination that, where the victim was walking away from the defendant when the defendant attacked him, the weight of the evidence supported the jury's determination that "there was no serious threat of harm to [the defendant]."[22]  This was a proper basis on which to deny the defendant's motion to reduce the verdict.[23]  See Commonwealth v. Rhodes, 482 Mass. 823, 827 (2019).  Cf. Acevedo, 446 Mass. at 444 n.14 (defendant's reasonable belief that he was at risk of serious harm may be sufficient to establish reasonable provocation where belief is result of physical contact between defendant and victim).
            Conclusion.  The judgments are affirmed, as are the denials of the defendant's postconviction motions to vacate the ABDW conviction and reduce the verdict of murder in the second degree to voluntary manslaughter.
So ordered.
 
footnotes

 
            1 As was his right, the defendant did not introduce any evidence at trial, although defense counsel vigorously cross-examined the Commonwealth's witnesses.  See art. 12 of the Declaration of Rights of the Massachusetts Constitution.
            2 In late July, the tenant had asked the defendant to move out of the apartment based on her belief that he had relapsed into a concerning pattern of substance use.  The tenant had, however, permitted the defendant to stay in the apartment until August 11, 2018.
            3 The damaged laptop was later found on the defendant's bed.
            4 The defendant's trial counsel had cross-examined the witnesses and made argument to support his contention that the defendant acted in self-defense.
            5 Section 8A provides as follows:
"In the prosecution of a person who is an occupant of a dwelling charged with killing or injuring one who was unlawfully in said dwelling, it shall be a defense that the occupant was in his dwelling at the time of the offense and that he acted in the reasonable belief that the person unlawfully in said dwelling was about to inflict great bodily injury or death upon said occupant or upon another person lawfully in said dwelling, and that said occupant used reasonable means to defend himself or such other person lawfully in said dwelling.  There shall be no duty on said occupant to retreat from such person unlawfully in said dwelling."
            6 The evidence does not rule out the possibility that the victim had a more formal connection to the property as a cotenant or subtenant under a lease or other rental agreement.
            7 Police recovered a baton from beneath the victim's body, but its position suggests that he was not holding or wielding it during the attack.  This conclusion is also supported by the evidence that the victim had sustained defensive wounds while the defendant had no visible injuries following the attack.
      
          8 As we have already concluded, even viewing the evidence in the light most favorable to the defendant, the castle law did not excuse the defendant from his duty to retreat.  It follows that the castle law does not provide that excuse in the context of the defendant's sufficiency argument either.
            9 The defendant does not argue that there was any error in the judge's homicide instructions, including those on voluntary manslaughter by mitigating circumstances, which tracked the Model Jury Instructions on Homicide 74-82 (2018).
            10 There was no evidence as to where the defendant's laptop computer was when the victim damaged it.  As we note supra, however, the defendant did not have any visible injuries after the victim damaged the laptop computer, and viewing the evidence in the light most favorable to the Commonwealth, it can be reasonably inferred that the victim did not touch the defendant's body when he struck the laptop.
            11 Given our conclusion, we need not reach the question whether the defendant had adequate time to "cool off" before the killing.  See Acevedo, 446 Mass. at 443 (manslaughter instruction is warranted where there is adequate evidence of provocation, and where "the killing followed the provocation before sufficient time had elapsed for the accused's temper to cool" [citation omitted]).
            12 For example, when asked, "Would you approach this case with an open mind and be fair to both sides?" juror no. 4 answered, "Absolutely."  Also, in response to the question, "Do you understand that you must presume [the defendant] is innocent and . . . does not have to testify . . . , and that if the [p]rosecution does not prove a charge beyond a reasonable doubt, then you must find [the defendant] not guilty on that charge?" juror no. 4 answered that he did and that he would "absolutely" "follow those rules."
            13 It is implicit in the judge's decision to seat juror no. 4 on the jury that the judge credited juror no. 4's responses.
            14 The Commonwealth also moved to preclude the defendant from admitting hearsay statements about "self-serving claims to witnesses that he [acted] in self-defense."
            15 The defendant does not specify what "consciousness of guilt evidence" he refers to.  We understand him to mean the Facebook post.
            16 Specifically, the excluded statements do not appear to fall within the spirit of any traditional hearsay exceptions, the claims of self-defense therein were not corroborated by other evidence, and they do not reflect "a consistent account on multiple occasions over time."  Steeves, 490 Mass. at 282-283.
            17 The prosecutor confirmed with the witness that the witness "[was not] identifying this as the knife [the witness saw in the defendant's possession,] but one that appeared to be similar to that."
            18 The defendant highlights the prosecutor's descriptions of the murder as a "savage crime"; of the defendant's actions as "hacking," "cutting," "slicing," "stabbing," "slash[ing]," and "carving up" the victim; and of the defendant as "looking for trouble" and blaming others for his problems.  He also challenges the prosecutor sarcastically referring to the defendant as "Mr. Broken Heart."  As we have stated, sarcasm is "often better avoided," and it would have been better avoided here.  See Commonwealth v. Garcia, 94 Mass. App. Ct. 91, 103-104 (2018).
            19 We draw this inference from the fact that the judge sentenced the defendant separately on each conviction.
            20 The defendant has not demonstrated any "clear legislative intent" that we should deviate from the usual elements-based approach to assessing his claim that his assault and battery conviction was duplicative of the conviction of murder in the second degree, and we are not persuaded by the defendant's alternative claim that we should do so.  Commonwealth v. Njuguna, 495 Mass. 770, 777 (2025).
            21 The defendant argued all three forms of mitigation before the trial judge.  Although the judge found none of the arguments persuasive, on appeal, the defendant challenges only the judge's determination that there was inadequate evidence of reasonable provocation to disturb the jury's verdict.
            22 The judge also noted that the evidence did not show that the defendant was under the influence of drugs when he killed the victim, "even if he may have used drugs recently."
            23 Given the judge's determination that the weight of the evidence did not require a finding of reasonable provocation, he did not reach the question whether the evidence allowed a finding that a reasonable person in the circumstances would have had time to "cool off" from that provocation.  See Acevedo, 446 Mass. at 443.